**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

FILED BY_____ D.C.

SEP 0 4 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

MARAT GOKHBERG and STEVE
OSTROVSKIY,

                  Plaintiffs,

         v.

ZURICH AMERICAN INSURANCE COMPANY,
ELS HOLDINGS LLC, and FCI LENDER
SERVICES, INC,

                  Defendants.

Case No. _____

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

      Plaintiffs MARAT GOKHBERG ("Marat") and STEVE OSTROVSKIY ("Steve")
(collectively, "Plaintiffs"), proceeding *pro se*, for their Complaint against Defendants ZURICH
AMERICAN INSURANCE COMPANY ("Zurich"), ELS HOLDINGS LLC ("ELS"), and FCI
LENDER SERVICES, INC. ("FCI") (collectively, "Defendants"), allege as follows:

**INTRODUCTION**[1]

1.     This action arises out of Defendants' collective misconduct in stripping required wind
coverage from Plaintiffs' builder's-risk policy, imposing a grossly inflated forced-placed premium
of $54,987.66 per year, and freezing construction-loan draws—thereby halting work on Plaintiffs'
nearly completed multifamily project at 3826–3830 NE 171st Street,  North Miami Beach,
Florida 33160 (the "Property").

---

[1] The headings and sections contained herein are intended as an aid for a reader without limiting
the claims in any way whatsoever. Each paragraph is hereby incorporated into each section of this
Complaint as if fully restated therein.

1

2.     Plaintiffs seek relief under (a) the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.* and Regulation X, 12 C.F.R. § 1024.37, and (b) Florida common and statutory law. Defendants' conduct has cost Plaintiffs more than $400,000 in excessive insurance charges, closing fees, additional borrowing costs, and construction delays.

**JURISDICTION AND VENUE**

3.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because Count I alleges violations of RESPA § 2605(k) and Regulation X.

4.     The Court has supplemental jurisdiction over the state-law claims in Counts II–VII under 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts.

5.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because the Property is located here and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred here.

**PARTIES**

6.     Plaintiff Marat Gokhberg is a natural person residing at 104 West End Avenue, PH-3, Brooklyn, New York 11235. Marat holds a 50 percent equitable interest in the Property and is personally liable for the construction loan and related insurance obligations described below.

7.     Plaintiff Steve Ostrovskiy is a natural person residing at 900 West Pembroke Road, Hallandale Beach, Florida 33009. Steve holds at least a 50 percent equitable interest in the Property and is likewise personally liable for the construction loan and related insurance obligations.

8.     Defendant Zurich American Insurance Company is a New York corporation with its principal place of business in Illinois. Zurich issued the builder's-risk policy at issue.

9.     Defendant ELS Holdings LLC is a limited-liability company organized under Virginia law with its headquarters in Reston, Virginia. ELS is the mortgagee and original lender on Plaintiffs' construction loan (Loan No. CF104489).

10.    Defendant FCI Lender Services, Inc. is a California corporation headquartered in Anaheim, California. At all relevant times, FCI was the loan servicer for ELS and acted as ELS's agent in administering the loan.

## STATEMENTS OF FACTS

11.    In 2023 Plaintiffs obtained a $4.5 million construction loan from ELS to complete the six-unit townhouse project at 3826–3830 NE 171st Street, North Miami Beach, Florida 33160. As a loan condition, Plaintiffs purchased a Zurich builder's-risk policy (Policy No. FL123456BR) effective June 14 2024 through December 14 2024 providing $5 million limits, including wind, for a total premium of $7,108.38 ($7,038.00 premium + $70.38 taxes). (**Exhibit A**.)

12.    In December 2024, midway through construction, Zurich abruptly refused to renew the policy with wind coverage, citing "market conditions." Zurich neither obtained Plaintiffs' written consent to exclude wind nor offered a reasonable substitute.

13.    On 23 October 2024 ELS unilaterally force-placed a $5 million commercial wind policy issued by Great American Excess & Surplus Insurance Company (Policy No. GAE-211-0587) and charged an annual premium of $54,987.66 to Plaintiffs' loan account. (**Exhibit B**.)

14.

15.    The forced coverage was unnecessary because at the time the forced coverage was placed, the structure was substantially completed, with only a pool, deck, and certain exterior items remaining.

16.     ELS/FCI then froze all further disbursements until Plaintiffs paid the forced-placed premium in full. Subcontractors went unpaid, permits neared expiration, and work ground to a halt.

17.     To finance construction, Plaintiffs obtained two loans secured by the Property: (i) a $200,000 mezzanine loan dated 3 March 2023, and (ii) a $500,000 bridge loan dated 19 May 2023 (together, the 'Loans'). Both Loans carried double-digit interest. Plaintiffs paid $30,000 in aggregate closing costs at origination. (**Exhibit C**.)

18.     FCI's monthly statement dated April 12, 2025 demanded immediate payment of $66,148.59 (principal, interest, and forced premium) and threatened acceleration if unpaid. (**Exhibit D**.)

19.     ELS/FCI's refusal to cancel the premium also blocked Plaintiffs' refinance: a term sheet dated April 28 2025 offered a construction take-out loan at 8.25 percent, but the lender conditioned closing on release of the forced-placed balance. (**Exhibit E**).

20.     As of filing, the forced-placed policy remains in effect, Plaintiffs are locked out of draws, and construction progress has stalled—risking lien claims, permit expiration, and irreparable market losses.

### FIRST CAUSE OF ACTION

### VIOLATION OF RESPA § 2605(K) & REG. X, 12 C.F.R. § 1024.37

### (Against ELS and FCI)

21.     Plaintiffs repeat and reiterate every allegation contained in the prior applicable paragraphs of this complaint with the same force and effect as if alleged herein.

22.     Under 12 U.S.C. § 2605(k)(1)(A), a servicer may not obtain force-placed insurance unless the borrower has failed to maintain required coverage and the insurance purchased is bona fide and reasonably priced.

23.     Regulation X requires a servicer to give 45-day and 30-day advance notices before charging for force-placed insurance and to cancel the policy and refund any unearned premium within 15 days after the borrower provides proof of coverage. See 12 C.F.R. § 1024.37(c), (d), (g). It also limits the amount the servicer may charge the borrower to no more than the servicer's actual cost of the insurance, and the charge must be bona-fide and reasonable. § 1024.37(h).

24.     Plaintiffs maintained insurance until Zurich unilaterally withdrew wind coverage; Plaintiffs were therefore not "without hazard insurance" within the meaning of § 2605(k).

25.     The $54,987.66 premium is not "bona fide" or "reasonable" because comparable policies were available for under $10,000 and the structure was largely enclosed.

26.     ELS/FCI further violated § 2605(k) by refusing to cancel the forced policy and refund the premium after receiving Plaintiffs' written request.

27.     As a direct result, Plaintiffs suffered actual damages exceeding $400,000 and are entitled to statutory damages under 12 U.S.C. § 2605(f)(1)(B) for Defendants' pattern or practice of non-compliance, together with costs and fees.

**SECOND CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Against Zurich)**

28.     Plaintiffs repeat and reiterate every allegation contained in the prior applicable paragraphs of this complaint with the same force and effect as if alleged herein.

29.     Zurich issued Policy No. FL-123456-BR covering the Property, expressly including wind peril, through the full term of the construction loan.

30.     Zurich's unilateral removal of wind coverage violated the policy terms and the implied covenant of good faith, as well as Fla. Stat. § 627.712(2) (prohibiting non-renewal of wind coverage absent insured's written consent).

31.     Zurich's breach forced Plaintiffs into costly forced-placed coverage and directly caused the damages set forth above.

## THIRD CAUSE OF ACTION

## BREACH OF CONTRACT & BREACH OF IMPLIED COVENANT OF GOOD FAITH

## AND FAIR DEALING

### (Against ELS and FCI)

32.     Plaintiffs repeat and reiterate every allegation contained in the prior applicable paragraphs of this complaint with the same force and effect as if alleged herein.

33.     The mortgage and construction loan agreement required ELS/FCI to act reasonably in force placing insurance and to disburse draws so long as Plaintiffs were not in material default.

34.     ELS/FCI breached these duties by (a) force placing an exorbitant policy without notice, (b) freezing draws despite satisfactory inspections, and (c) capitalizing illegitimate premiums to the loan balance.

35.     ELS/FCI's conduct also breached the covenant of good faith by exercising discretionary powers (force placement and draw control) contrary to Plaintiffs' justified expectations.

36.     These breaches caused the financial harms described herein.

## FOURTH CAUSE OF ACTION

6

## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA),

## FLA. STAT. §§ 501.201–501.213

### (Against All Defendants)

37.     Plaintiffs repeat and reiterate every allegation contained in the prior applicable paragraphs of this complaint with the same force and effect as if alleged herein.

38.     Defendants engaged in "unfair" and "deceptive" acts by (a) selling or facilitating an inflated forced placed policy, (b) misrepresenting that no alternative wind coverage was available, and (c) concealing the true cost basis of the premium.

39.     These acts offend established public policy, are immoral, unethical, and substantially injure consumers who have no reasonable alternative.

40.     Plaintiffs suffered actual damages, including overcharges and lost financing, and are entitled to restitution, injunctive relief, and attorneys' fees under Fla. Stat. § 501.2105.

### FIFTH CAUSE OF ACTION

### NEGLIGENCE

### (Against All Defendants)

41.     Plaintiffs repeat and reiterate every allegation contained in the prior applicable paragraphs of this complaint with the same force and effect as if alleged herein.

42.     Zurich owed Plaintiffs a duty under Florida's insurance statutes and common law to exercise reasonable care in renewing builder's-risk coverage consistent with market standards.

43.     ELS and FCI owed Plaintiffs common-law duties of reasonable care in loan servicing and a statutory duty under RESPA not to impose unreasonable forced-placed premiums.

44.     Defendants breached these duties as set forth above, proximately causing Plaintiffs' economic losses.

7

## SIXTH CAUSE OF ACTION

## UNJUST ENRICHMENT (PLED IN THE ALTERNATIVE)

### (Against All Defendants)

45.     Plaintiffs repeat and reiterate every allegation contained in the prior applicable paragraphs of this complaint with the same force and effect as if alleged herein.

46.     Defendants received and retained benefits (premiums, interest, fees) directly traceable to their wrongful conduct.

47.     Retention of those benefits would be inequitable; therefore, Defendants must make restitution.

## SEVENTH CAUSE OF ACTION

## EQUITABLE RESCISSION

### (Against All Defendants)

48.     Plaintiffs repeat and reiterate every allegation contained in the prior applicable paragraphs of this complaint with the same force and effect as if alleged herein.

49.     Defendants' material breaches—including unlawfully force-placing insurance, refusing draws, and misapplying payments—defeated the very purpose of the Loan agreements.

50.     It would be unconscionable to permit Defendants to retain the benefit of the Loan contracts while continuing to enforce them against Plaintiffs.

51.     Plaintiffs therefore seek equitable rescission of the Loan documents, together with restitution of all amounts paid to date, or such partial rescission as the Court deems just and practicable.

## DAMAGES

52.     Plaintiffs have suffered: (a) $54,987.66 in forced-placed premiums; (b) $30,000 in transaction and closing costs; (c) continuing interest on the $200,000 *and* $500,000 bridge loans; (d) construction-delay damages now estimated at $250,000; and (e) credit and emotional-distress harm.

53.     Plaintiffs also seek statutory damages under 12 U.S.C. § 2605(f) and Fla. Stat. § 501.211, plus costs and prejudgment interest.

## RELIEF

**WHEREFORE**, Plaintiffs respectfully request this Court to grant judgment in their favor against the Defendants and award the following relief:

**A.**     Enter judgment for Plaintiffs on all Counts and award compensatory, statutory, and exemplary damages in the amount of $1,200,000 (One Million Two Hundred Thousand) US dollars;

**B.**     Order Defendants ELS and FCI to cancel the forced-placed policy and refund all premiums, interest, and fees improperly charged;

**C.**     Declare that Zurich's removal of wind coverage violated Fla. Stat. § 627.712 and the policy terms;

**D.**     Grant injunctive relief prohibiting further forced-placement absent strict RESPA compliance;

**E.**     Award restitution or disgorgement of unjust benefits obtained by Defendants;

**F.**     Award fees and costs under RESPA § 2605(f)(3) and Fla. Stat. § 501.2105;

**G.**     Award pre- and post-judgment interest; and

**H.**     Grant such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial of these claims by jury to the extent authorized by law.

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Dated: July 1, 2025
       Miami, Florida

Plaintiffs:

_____
Marat Gokhberg
104 West End Ave, Unit PH-3,
Brooklyn, NY 11235

_____
Steve Ostrovskiy
900 W Pembroke Rd,
Hallandale Beach, FL 33009

**VERIFICATION**

We, **Marat Gokhberg** and **Steve Ostrovskiy,** declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of our knowledge.

Executed on this 1st day of July 2025.
Miami, FL

 

_____
Marat Gokhberg
104 West End Ave, Unit PH-3,
Brooklyn, NY 11235

 

_____
Steve Ostrovskiy
900 W Pembroke Rd,
Hallandale Beach, FL 33009

Plaintiffs hereby demand a trial of these claims by jury to the extent authorized by law.

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Dated: July 1, 2025
       Miami, Florida

Plaintiffs:

Marat Gokhberg
104 West End Ave, Unit PH-3,
Brooklyn, NY 11235

Steve Ostrovskiy
900 W Pembroke Rd,
Hallandale Beach, FL 33009

10

## VERIFICATION

We, **Marat Gokhberg** and **Steve Ostrovskiy,** declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of our knowledge.

Executed on this 1st day of July 2025.
Miami, FL.


Marat Gokhberg
104 West End Ave, Unit PH-3,
Brooklyn, NY 11235


Steve Ostrovskiy
900 W Pembroke Rd,
Hallandale Beach, FL 33009

11

# EXHIBIT "E"



# APPROVAL CERTIFICATE

| | | | | | |
|---|---|---|---|---|---|
| **Loan Number** | 6250401495 | **Approval Date** | 04/18/2025 | **Lock Status** | NotLocked |
| Marat Gokhberg | | **Approval Exp Date** | | **Loan Amount** | $1,500,000.00 |
| 3826 NE 171ST ST | | | | | |
| N MIAMI BEACH, FL 33160 | | **AU Response** | | **Total Loan Amount** | $1,500,000.00 |
| **Loan Purpose** | Refi-CO | **DO/DU Case ID** | | **Note Rate** | 7.250% |
| **Loan Program** | 30 YR FIXED ACCESS DSCR - 3 YR PREPAY PENALTY TERM | | | **Term/Due** | 360 / 360 Months |

| | | |
|---|---|---|
| **Appraisal Exp Date** | **Prelim Title Exp Date** | |
| **Income Docs Exp Date** | **Credit Exp Date** | |
| **Asset Exp Date** | **Rate Lock Expiration** | |

| | | | |
|---|---|---|---|
| **Monthly Income** | $0.00 | **Cashout Amount** | $350,000.00 |
| **Debt to Income Ratio** | | **Impound Type** | Tax and insurance escrow |
| **DSCR Ratio** | 1.000000 | **Payment Type** | Principal & Interest |
| **LTV/CLTV/HCLTV** | 75.000% / 75.000% / 75.000% | **Documentation** | DSCR |
| **Qualifying Score** | 783 | **Mortgage Insurance** | No MI |
| **Principal & Interest** | $10,232.64 | **Upfront MIP Fee Financed** | $0.00 |
| **Insurance, Tax and/or HOA** | 1708.00 | | |
| **Total Debt** | 17974.64 | | |

| | | | |
|---|---|---|---|
| **Purchase Price** | $0.00 | **Property Type** | SFR |
| **Appraised Value** | $2,000,000.00 | **Property Occupancy** | Investment |

| CGAP, Inc Responsibility | | | |
|---|---|---|---|
| Category | ID | Conditions | Condition Status |
| PRIOR TO CLEAR TO CLOSE | 3 | Borrower to provide a signed letter stating the purpose of the cash out | Active |
| | 6 | DSCR - ARC will perform undisclosed debt monitoring through the note date. When mortgage inquiries are present, a written explanation for the inquiry is required. | Active |
| | 19 | Provide a signed and dated letter of explanation for the following primary address variations on credit report:<br>1. 67 Amherst St Brooklyn, NY 11235 (02/2011-04/2025)<br>2. 1750 Wilcox Ave Apt 305 Los Angeles, CA 90028 (08/21/2024) | Active |
| | 20 | Per Data Verify, identity of the borrower must be verified.<br>Provide copy of Social Security Card OR b. executed SSA-89 form with verification of social security number. Arc AM to provide verification of social security number once executed SSA-89 is received. | Active |
| | 21 | Potential Conflict of Interest - Two or more parties have similar LAST NAMES (but different first names) on the loan.  Provide a signed and dated LOE as to the relationship between borrower and LO with the same uncommon last name (MARAT GOKHBERG / YURY GOKHBERG) | Active |
| | 23 | Minimum DSCR ratio must be met and maintained per product matrix | Active |
| | 24 | P108: Provide a satisfactory appraisal to support the loan request including all attachments, appraiser's current license and E&O.  Provide Single Family Comparative Rent Schedule and/or Operating Income Statement, if applicable. | Active |
| | 30 | Provide an executed special notice in flood zone cert. | Active |
| | 32 | ARC Home may order a CDA appraisal review; final acceptance of the appraisal is contingent on the results of collateral review. | Active |

**Loan #:6250401495**



| | | | |
|---|---|---|---|
| PRIOR TO CLEAR TO CLOSE | 42 | Provide hazard insurance to reflect sufficient coverage that must extend 60 days past note date or have auto renewal. The property insurance policy for the property securing any first mortgage, including master policies for project developments, must be written by an insurer that meets FNMA rating requirements.<br>Mortgagee Clause should read: Shellpoint Mortgage Servicing ISAOA/ATIMA, P.O. Box 7050, Troy, MI 48007-7050 | Active |
| | 43 | Provide property Tax Certification | Active |
| | 44 | If subject property is currently rented - executed lease agreement is required. | Active |
| | 46 | Loan must be locked prior to Clear to Close | Active |
| | 48 | Program requires reserves:  6 months - $72,000 reserves for the subject property. Please document these assets with statements covering the most recent 30 days. | Active |
| | 49 | Approval expiration based on expiration dates; credit report expires: 08/14/2025; Appraisal: _____; Title: _____; CPL: __tbd__, VVOE: __tbd__, Mortgage rating expiration date: 04/30/2025 | Active |
| | 51 | Preliminary title report with Loan Amount of $1,500,000 including 24 months chain of title, plat map/survey or survey endorsement dated within 60 days of note date.<br>Proposed Insured: Arc Home LLC ISAOA/ATIMA | Active |
| | 53 | For DSCR:<br>Provide 0x30x12 mortgage history Verifying 12-month mortgage history for mortgage of $750,000 with Citizen Acct #4007) on the borrower's primary residence with current mortgage payment of $4923 (per submitted URLA), along with current Tax Cert, HOI and HOA, if applicable, for primary residence located at 104 West End Ave PH3 Brooklyn, NY 11235.  Must verify payment history for Primary residence through the month of close. | Active |
| | 55 | Verification of Mortgage from FCI Lender Services, Inc Acct #399526971 for the most recent 12 months. | Active |
| | 56 | Provide payoff good through closing and showing next payment due date of for mortgage from FCI Lender Services, Inc Acct #399526971 | Active |
| | 57 | Subject property is located in a flood zone (AE).<br><br>Provide flood insurance policy with coverage equal to the loan amount or $250,000, whichever is less | Active |
| PRIOR TO DOCS ORDERED | 22 | Credit Report invoice(s) to be uploaded prior to CD request. Closer to sign off when CD is requested. | Active |
| | 33 | Provide Errors and Omission for title company | Active |
| | 34 | Provide wire instructions for title company | Active |
| | 36 | Provide Prelim CD from title company | Active |
| | 38 | Provide closing protection letter dated within 60 days of note date with the following name & address:<br>Arc Home LLC ISAOA/ATIMA<br>224 Strawbridge Drive, Suite 200<br>Moorestown, NJ 08057 | Active |
| AT CLOSING | 31 | Final URLA W/Addendum (If Applicable) Signed And Dated By All Parties | Active |
| | 41 | Cash to Close not to exceed $0.00 | Active |
| | 52 | Provide Settlement Statement (HUD-1) to reflect a final loan amount of $1,500,000 paying off FCI Lender Services, Inc Acct #399526971 and cash from the borrower at closing may not exceed verified assets of $0.00 | Active |

| Arc Home Responsibility | | | |
|---|---|---|---|
| Category | ID | Conditions | Condition Status |
| AT CLOSING | 18 | Cash out has been identified as business use. A business purpose affidavit is required to be signed at closing. | Active |
| | 47 | Borrower(s) must affirm the purpose of the loan by executing a Business Purpose and Occupancy Affidavit. | Active |

April 18, 2025 12:09 PM PDT

Arc Home LLC
224 Strawbridge Drive, Suite 200
Moorestown, NJ 08057

**Contact Information**

**Underwriter Name**        Karen Webb-Smith                **Underwriter Phone Number**        215-383-9480

**Loan #:6250401495**

| | | | |
|---|---|---|---|
| **Underwriter Email** | kwebbsmith@archome.com | | |
| **Account Manager Name** | Nella Savage | **Account Manager Phone Number** | 856-831-7039 |
| **Account Manager Email** | nsavage@archome.com | | |

arc home

# EXHIBIT "B"

ELS Holdings LLC
PO Box 3160
Reston, VA 20195

02/21/2025

Marat Gokhberg
104 West End Ave UNIT PH-3
Brooklyn, NY 11235

Loan Number:                    CF104489
Property Address:       3826 NE 171 St, North Miami Beach, FL 33160

Subject: **Builder's Risk Insurance – FORCE PLACEMENT NOTICE**

Dear Borrower:

Under the terms of your loan agreement, and as indicated in a previous notice sent to you, we had purchased
insurance at your expense to protect ELS Holdings LLC's interest in the collateral referenced above.

The yearly insurance premium on the collateral listed above is $54,987.66. In accordance with the terms of
your loan, you are responsible for the cost of this insurance including interest and any other charges we may
impose in connection with the purchase of this insurance.

You still may and should obtain insurance from the Agent of your choice. If you provide us with satisfactory
proof of alternate insurance coverage, we will cancel the insurance policy we purchased and refund or credit
any unearned premiums on a pro rata basis. To obtain a full refund, you must provide us with proof you had
adequate insurance on your collateral as required by your loan agreement from the effective date of the
enclosed policy.

Please provide or have your Insurance Agent provide us, as soon as possible, with your valid insurance policy
with ELS Holdings LLC listed as the mortgagee. The fax number and mortgagee clause are as follows:

(518) 863-7481

ELS Holdings LLC
Its Successors and/or Assigns, ATIMA
PO Box 3160
Reston, VA 20195

For your convenience, you may also use our convenient online site, www.ValidateMyInsurance.com, to provide
your current insurance information. If you have any questions, please feel free to contact our Insurance
Center at (888) 248-9499. Office hours are Monday through Friday, 8:00 a.m. to 5:00 p.m. Eastern Standard
Time. Please have your loan number and this letter available for identification.

Thank you for your prompt attention to this matter.

Sincerely,

ELS Holdings LLC

2169-CF104489

## NOTICE OF INSURANCE

**GREAT AMERICAN EXCESS AND SURPLUS INSURANCE COMPANY**

49 E. FOURTH STREET • CINCINNATI, OH 45202

**THIS INSURANCE IS NON-TRANSFERABLE**

ISSUE DATE:   02/21/2025

**ITEM 1:** Mortgagor Name and Mailing Address

Marat Gokhberg
104 West End Ave UNIT PH-3
Brooklyn, NY 11235

Insured Mortgagee Name and Address

Churchill Funding LLC ISAOA/ATIMA
1415 Vantage Park Drive
Suite 240
Charlotte, NC 28203

**ITEM 2:** Coverage Period

| Effective Date | | | Expiration Date | | | Term In Months |
|---|---|---|---|---|---|---|
| MO | DAY | YR | MO | DAY | YR | |
| 12 | 21 | 24 | 12 | 21 | 25 | 12 |

Certificate Number:  GAE0001040501

Mortgagee's Policy Number:  F156197

Mortgage Agreement:  CF104489

**ITEM 3:**

| COVERAGE TYPE | MARK (X) ONE | AMOUNT OF INSURANCE | PREMIUM |
|---|---|---|---|
| RESIDENTIAL  (Dwelling) | X | $1,305,500.00 | $52,220.00 |
| COMMERCIAL OCCUPIED  (Building) | | | |
| COMMERCIAL VACANT (Building) | | | |
| MOBILE HOME  (ANCHORED) | | | |
| MOBILE HOME  (UNANCHORED) | | | |
| | | TAX | $2,767.66 |
| | | POLICY FEE | $0.00 |
| | | TOTAL AMOUNT | $54,987.66 |

**ITEM 4:**   Property Description / Address
3826 NE 171 St
North Miami Beach, FL 33160

**This is not a Homeowner's Policy.** This insurance provides hazard protection against loss to the property from perils including fire, lightning, explosion, vandalism, smoke, volcanic eruption, sinkhole, sprinkler leakage and riot, subject to the terms and conditions of the mortgagee's policy. This coverage may not meet the mortgagor's insurance needs. There is no coverage for liability, contents or additional living expenses unless indicated above under COVERAGE TYPE. There is no coverage for flood or earthquake and windstorm and hail may be limited. In the event of total loss, the limits provided above may not be adequate to restore the property.

**Deductible:** In the event of loss, this policy shall be subject to a deductible as defined in the Mortgagee's policy.

**This Notice of Insurance is for information only. It neither amends, extends nor alters the coverage afforded by the Mortgagee's policy which it describes. Consult the Mortgagee's policy for actual terms and condition.**

ACE 8901 (8/99)

ELS Holdings LLC
PO Box 3160
Reston, VA 20195

02/21/2025

Marat Gokhberg
104 West End Ave UNIT PH-3
Brooklyn, NY 11235

Loan Number:                     CF104489
Property Address:        3826 NE 171 St, North Miami Beach, FL 33160

Subject: **Wind Insurance – FORCE PLACEMENT NOTICE**

Dear Borrower:

Under the terms of your loan agreement, and as indicated in a previous notice sent to you, we had purchased insurance at your expense to protect ELS Holdings LLC's interest in the collateral referenced above.

The yearly insurance premium on the collateral listed above is $54,987.66. In accordance with the terms of your loan, you are responsible for the cost of this insurance including interest and any other charges we may impose in connection with the purchase of this insurance.

You still may and should obtain insurance from the Agent of your choice. If you provide us with satisfactory proof of alternate insurance coverage, we will cancel the insurance policy we purchased and refund or credit any unearned premiums on a pro rata basis. To obtain a full refund, you must provide us with proof you had adequate insurance on your collateral as required by your loan agreement from the effective date of the enclosed policy.

Please provide or have your Insurance Agent provide us, as soon as possible, with your valid insurance policy with ELS Holdings LLC listed as the mortgagee. The fax number and mortgagee clause are as follows:

(518) 863-7481

ELS Holdings LLC
Its Successors and/or Assigns, ATIMA
PO Box 3160
Reston, VA 20195

For your convenience, you may also use our convenient online site, www.ValidateMyInsurance.com, to provide your current insurance information. If you have any questions, please feel free to contact our Insurance Center at (888) 248-9499. Office hours are Monday through Friday, 8:00 a.m. to 5:00 p.m. Eastern Standard Time. Please have your loan number and this letter available for identification.

Thank you for your prompt attention to this matter.

Sincerely,

ELS Holdings LLC

2169-CF104489

## NOTICE OF INSURANCE

**GREAT AMERICAN EXCESS AND SURPLUS INSURANCE COMPANY**
49 E. FOURTH STREET • CINCINNATI, OH 45202

**THIS INSURANCE IS NON-TRANSFERABLE**

ISSUE DATE:  02/21/2025

**ITEM 1:** Mortgagor Name and Mailing Address

Marat Gokhberg
104 West End Ave UNIT PH-3
Brooklyn, NY 11235

Insured Mortgagee Name and Address

Churchill Funding LLC ISAOA/ATIMA
1415 Vantage Park Drive
Suite 240
Charlotte, NC 28203

**ITEM 2:** Coverage Period

| Effective Date | | | Expiration Date | | | Term In Months |
|---|---|---|---|---|---|---|
| MO | DAY | YR | MO | DAY | YR | |
| 12 | 21 | 24 | 12 | 21 | 25 | 12 |

Certificate Number:  GAE0001040502

Mortgagee's Policy Number:  F156197

Mortgage Agreement: CF104489

**ITEM 3:**

| COVERAGE TYPE | MARK (X) ONE | AMOUNT OF INSURANCE | PREMIUM |
|---|---|---|---|
| RESIDENTIAL  (Dwelling) | X | $1,305,500.00 | $52,220.00 |
| COMMERCIAL OCCUPIED  (Building) | | | |
| COMMERCIAL VACANT (Building) | | | |
| MOBILE HOME  (ANCHORED) | | | |
| MOBILE HOME  (UNANCHORED) | | | |
| | | TAX | $2,767.66 |
| | | POLICY FEE | $0.00 |
| | | TOTAL AMOUNT | $54,987.66 |

**ITEM 4:**   Property Description / Address
3826 NE 171 St
North Miami Beach, FL 33160

**This is not a Homeowner's Policy.**  This insurance provides hazard protection against loss to the property from perils including fire, lightning, explosion, vandalism, smoke, volcanic eruption, sinkhole, sprinkler leakage and riot, subject to the terms and conditions of the mortgagee's policy.  This coverage may not meet the mortgagor's insurance needs.  There is no coverage for liability, contents or additional living expenses unless indicated above under COVERAGE TYPE.  There is no coverage for flood or earthquake and windstorm and hail may be limited.  In the event of total loss, the limits provided above may not be adequate to restore the property.

**Deductible:**  In the event of loss, this policy shall be subject to a deductible as defined in the Mortgagee's policy.

**This Notice of Insurance is for information only.  It neither amends, extends nor alters the coverage afforded by the Mortgagee's policy which it describes.  Consult the Mortgagee's policy for actual terms and condition.**

ACE 8901 (8/99)

# EXHIBIT "A"



### Market leadership
Zurich has been providing comprehensive solutions for more than 140 years around the globe

### Financial strength
We demonstrate strength and stability: AA- S&P and A+ A.M. Best ratings

### Industry experience
Zurich insures 90% of Fortune 500 companies, and provides cutting-edge insights for 25 industries

### Exceptional people
We are a values-based organization and live the Zurich Commitment in all we do, which includes acting responsibly and following our core values

### Delivering when it matters
Industry leading claims service in North America

Zurich Insurance Group (Zurich) offers insurance solutions around the globe through its member companies.

Rating as of March 31, 2016. A.M. Best and S&P's ratings are under continuous review and subject to change and/or affirmation. For the latest ratings, access the ratings section on www.zurichna.com. The rating represents the overall financial status of the individual member companies of Zurich in North America, including Zurich American Insurance Company in the United States and Zurich Insurance Company Ltd (Canadian Branch) in Canada, and is not a recommendation of the specific policy provisions, rates or practices of each issuing insurance company. The Zurich logo and Zurich are trademarks of Zurich Insurance Company Ltd.
© 2016 Zurich American Insurance Company. All rights reserved.
© 2016 Zurich Insurance Company Ltd (Canadian Branch). All rights reserved.

A1-U-GU-1220-B CW (09/16)  112008270

Zurich Programs
**Builders Risk and Installation**



# Quote Proposal

Attention US ASSURE INSURANCE SERVICES OF FLORIDA, INC.:

Thank you for the opportunity to provide you with a quote proposal. The quote is based on the underwriting and rating information, including deductibles and retention, provided to date and may be subject to additional rating, pricing or underwriting considerations. Also, acceptability may be subject to an Engineering and Safety Services survey and compliance with its recommendations.

This is a proposal for insurance.  It is not an insurance policy. The coverages offered in this proposal are based on information received through the agent and may not include all available coverages.  The agent and the customer should discuss the need for any additional or optional coverages.  Coverage descriptions are abbreviated and do not indicate in force coverage.  Only the policy itself provides coverage.

This proposal is not a part of and is not incorporated into the insurance policy.  If there is any conflict between the coverage descriptions shown in this proposal and the actual insurance policy, the insurance policy prevails.  The insurance policy supercedes this proposal.

Thank you,

Builders Risk Underwriter
US Assure
8230 Nations Way
Jacksonville, Florida 32256
800-800-3907

This is a proposal for insurance.  It is not an insurance policy. Only the policy itself provides coverage. The coverages offered in this proposal are based on information received through the agent and may not include all available coverages.  The client and their agent should discuss any additional or optional coverages needed.  Coverage descriptions are abbreviated and do not indicate in force coverage. This proposal is not a part of and is not incorporated into the insurance policy.  If there is any conflict between the coverage descriptions shown in this proposal and the actual insurance policy, the insurance policy prevails. The insurance policy supercedes this proposal.
"If you want to learn more about the compensation Zurich pays agents and brokers visit: http://www.zurichnaproducercompensation.com or call the following toll free number: (866) 903-1192.  This Notice of Disclosure is provided on behalf of Zurich American Insurance Company and its underwriting subsidiaries."

# Zurich Programs
# **Builders Risk and Installation**



Our Builders Risk Plan offers world-class coverages, flexibility and service to agents and builders nationwide.  For more than 30 years, we've been pioneering the development of insurance solutions for construction professionals and have protected the property interests of builders and developers on even the most intricate residential and commercial construction projects. The Builders Risk product offers a wide spectrum of property coverage.  Here are few highlights of the coverage offered:

- Construction Forms, Scaffolding and Temporary Structures up to $50,000
- Re-erection of scaffolding if caused by or results from a covered cause of loss up to $25,000
- Valuable Papers and Records – Cost of Research up to $50,000
- Outdoor Trees, Shrubs, Plants and Lawns
- Additional Debris Removal expense is covered up to but not exceeding $50,000
- Coverage for Pollutant Clean-up and Removal of land and water for up to $25,000 for each 12 month period of the policy.
- Fire Department Service Charge up to $25,000
- Reward up to $25,000
- Waiver of Coinsurance clause if loss is less than or equal to $25,000
- Foundations
- Our valuation can include profit up to 20% for new structures only if included in the Limit of Insurance you selected
- Broad Collapse coverage
- Back-up or overflow of sewers, drains or sumps up to $25,000
- Paving, Curbing, Fences and Outdoor Fixtures
- Ordinance or Law demolition and increased cost  Coverage up to $1,000,000 limit for construction of new structures only
- Inadvertent omission in reporting on a monthly reporting form policy
- Model Homes and Model Home Contents coverage can be added on a reporting form policy

Strong, reliable insurance protection is available from Zurich Programs.  Zurich Programs is an integral part of Zurich North America.

Zurich Financial Services (www.zurich.com) is an insurance-based financial services provider with a global network that focuses its activities on its key markets in North America and Europe. Founded in 1872, Zurich is headquartered in Zurich, Switzerland. Through its offices in more than 50 countries, 57,000 Zurich employees serve clients in more than 120 countries. In North America, Zurich (www.zurichna.com) is a leading commercial property-casualty insurance provider serving the global corporate, large corporate, middle market, specialties and programs sectors.

This is a proposal for insurance.  It is not an insurance policy.  Only the policy itself provides coverage. The coverages offered in this proposal are based on information received through the agent and may not include all available coverages.  The client and their agent should discuss any additional or optional coverages needed.  Coverage descriptions are abbreviated and do not indicate in force coverage. This proposal is not a part of and is not incorporated into the insurance policy.  If there is any conflict between the coverage descriptions shown in this proposal and the actual insurance policy, the insurance policy prevails. The insurance policy supercedes this proposal.
"If you want to learn more about the compensation Zurich pays agents and brokers visit:
http://www.zurichnaproducercompensation.com or call the following toll free number: (866) 903-1192.  This Notice of Disclosure is provided on behalf of Zurich American Insurance Company and its underwriting subsidiaries."

## Zurich Programs
# Builders Risk and Installation



# Quote Proposal
## Premium Summary

**Prepared For**   MARAT GOKHBERG
12000 BISCAYNE BLVD
Miami, FL 33181

**Presented By**   US ASSURE INSURANCE SERVICES OF FLORIDA, INC.
P.O. BOX 10197
JACKSONVILLE, FL 32247-0197

A0237516

**Proposed Policy Period**   **From** 06/14/2024   **To** 12/14/2024
(12:01 a.m. Standard Time at your address as stated herein)

| Coverage and premium information | | |
|---|---|---|
| This is intended only as a brief outline and does not alter any of the coverages, conditions, exclusions or provisions contained in the policy. | **Type of coverage** | **Total Premium (all locations)\*** |
| | Builders Risk | $7,038.00 |
| | Proposed Policy Premium\* | $7,038.00 |
| | State Taxes & Surcharges | $70.38 |
| | Total fully earned policy premium\* | $7,108.38 |

\* Premium quotation valid for 30 days from the date on the first page of this proposal.
Policy is fully earned

See attached Disclosure of Terrorism Premium.

This is a proposal for insurance. It is not an insurance policy. Only the policy itself provides coverage. The coverages offered in this proposal are based on information received through the agent and may not include all available coverages. The client and their agent should discuss any additional or optional coverages needed. Coverage descriptions are abbreviated and do not indicate in force coverage. This proposal is not a part of and is not incorporated into the insurance policy. If there is any conflict between the coverage descriptions shown in this proposal and the actual insurance policy, the insurance policy prevails. The insurance policy supercedes this proposal.
"If you want to learn more about the compensation Zurich pays agents and brokers visit:
http://www.zurichnaproducercompensation.com or call the following toll free number: (866) 903-1192. This Notice of Disclosure is provided on behalf of Zurich American Insurance Company and its underwriting subsidiaries."

# Zurich Programs
# **Builders Risk and Installation**



| Primary Builders Risk Coverages | Deductible | Total Limits | Premium |
|---|---|---|---|
| Amount of renovation/improvements | $5,000 | $866,255 | |
| All Covered Property at all Locations | $5,000 | $1,466,255 | $7,038 |
| Additional Coverages: | | | |
| Back-up or Overflow of Sewer, Drains or Sumps | None | $25,000 | $0 |
| Claim Preparation Expense | None | $10,000 | $0 |
| Contract Penalties | None | $25,000 | $0 |
| Debris Removal | None | $50,000 | $0 |
| Fire Department Service Charge | None | $25,000 | $0 |
| Pollutant Clean-Up and Removal | None | $25,000 | $0 |
| Rewards | None | $25,000 | $0 |
| Re-erection of Scaffolding | None | $25,000 | $0 |
| Scaffolding, Construction Forms and Temporary Structures | None | $50,000 | $0 |
| Property at a Temporary Storage Location | $5,000 | $73,313 | $0 |
| Property in Transit | $5,000 | $73,313 | $0 |
| Valuable Papers and Records | None | $50,000 | $0 |

| Coverage Extensions | Deductible | Total Limits | Premium |
|---|---|---|---|
| Profit | | If included | |

This is a proposal for insurance.  It is not an insurance policy.  Only the policy itself provides coverage. The coverages offered in this proposal are based on information received through the agent and may not include all available coverages.  The client and their agent should discuss any additional or optional coverages needed.  Coverage descriptions are abbreviated and do not indicate in force coverage. This proposal is not a part of and is not incorporated into the insurance policy.  If there is any conflict between the coverage descriptions shown in this proposal and the actual insurance policy, the insurance policy prevails. The insurance policy supercedes this proposal.
"If you want to learn more about the compensation Zurich pays agents and brokers visit:
http://www.zurichnaproducercompensation.com or call the following toll free number: (866) 903-1192.  This Notice of Disclosure is provided on behalf of Zurich American Insurance Company and its underwriting subsidiaries."

# Zurich Programs
## Builders Risk and Installation



| Special Conditions | Deductible | Total Limits | Premium |
|---|---|---|---|
| Wind deductible | 5% | Per Occurrence | $0 |

# Quote Proposal

### 24-hour Claim Service

Our claim representatives understand businesses like yours and recognize how difficult a business shutdown can be for you.  So, while they provide service that's fast, responsive and fair, their ultimate goal is to minimize your business disruption and get you back to full operation as promptly as possible.

In the event you have a loss, we now offer online loss reporting with immediate acknowledgement.  Your claim is assigned to a local claim office, usually within two hours of reporting the loss, but generally no longer than 24 hours.  You can also call us toll-free at 1-888-279-9375.

This is a proposal for insurance.  It is not an insurance policy.  Only the policy itself provides coverage. The coverages offered in this proposal are based on information received through the agent and may not include all available coverages.  The client and their agent should discuss any additional or optional coverages needed.  Coverage descriptions are abbreviated and do not indicate in force coverage. This proposal is not a part of and is not incorporated into the insurance policy.  If there is any conflict between the coverage descriptions shown in this proposal and the actual insurance policy, the insurance policy prevails. The insurance policy supercedes this proposal.
"If you want to learn more about the compensation Zurich pays agents and brokers visit:
http://www.zurichnaproducercompensation.com or call the following toll free number: (866) 903-1192.  This Notice of Disclosure is provided on behalf of Zurich American Insurance Company and its underwriting subsidiaries."

# Zurich Programs
## Builders Risk and Installation



# Quote Proposal

**Customer and Agent Information**

**Named Insured:** MARAT GOKHBERG
**Agency Name:** US ASSURE INSURANCE SERVICES OF FLORIDA, INC.

**Customer Location Information**

**Location Address:**

3830 NE 171 ST
NORTH MIAMI BEACH, FL 33160

**Protection Class:** 2
**Construction:** Joisted Masonry
**# of Stories:** 3
**Primary occupancy:** Habitational (greater than 1 unit)

**Additional Interests**

Mortgagee - ELS HOLDINGS LLC ISAOA/ATIMA
12000 BISCAYNE BLVD
400
Miami, FL 33181

This is a proposal for insurance.  It is not an insurance policy.  Only the policy itself provides coverage. The coverages offered in this proposal are based on information received through the agent and may not include all available coverages.  The client and their agent should discuss any additional or optional coverages needed.  Coverage descriptions are abbreviated and do not indicate in force coverage. This proposal is not a part of and is not incorporated into the insurance policy.  If there is any conflict between the coverage descriptions shown in this proposal and the actual insurance policy, the insurance policy prevails. The insurance policy supercedes this proposal.
"If you want to learn more about the compensation Zurich pays agents and brokers visit:
http://www.zurichnaproducercompensation.com or call the following toll free number: (866) 903-1192.  This Notice of Disclosure is provided on behalf of Zurich American Insurance Company and its underwriting subsidiaries."



**THIS DISCLOSURE DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER ANY POLICY.**

# DISCLOSURE OF IMPORTANT INFORMATION RELATING TO TERRORISM RISK INSURANCE ACT

## SCHEDULE*

Premium attributable to risk of loss from certified acts of terrorism for lines of insurance subject to TRIA:

**$0**

*Any information required to complete this Schedule, if not shown above, will be shown in the quote or proposal.

**A. Disclosure of Premium**

In accordance with the federal Terrorism Risk Insurance Act ("TRIA"), as amended, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the risk of loss from terrorist acts certified under that Act for lines subject to TRIA. That portion of premium attributable is shown in the Schedule above. The premium shown in the Schedule above is subject to adjustment upon premium audit, if applicable.

**B. Disclosure of Federal Participation in Payment of Terrorism Losses**

You should know that where coverage is provided by this policy for losses resulting from certified acts of terrorism, the United States Government may pay up to 80% of insured losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

**C. Disclosure of $100 Billion Cap on All Insurer and Federal Obligations**

If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a calendar year (January 1 through December 31) and an insurer has met its deductible under the program, that insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

**D. Availability**

As required by TRIA, we have made available to you for lines subject to TRIA coverage for losses resulting from acts of terrorism certified under TRIA with terms, amounts and limitations that do not differ materially from those for losses arising from events other than acts of terrorism.

**E. Definition of Act of Terrorism under TRIA**

TRIA defines "act of terrorism" as any act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act ("TRIA"), to be an act of terrorism. The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism:

1. To be an act of terrorism;

2. To be a violent act or an act that is dangerous to human life, property or infrastructure;

3. To have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

4. To have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Copyright © 2020 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

No act may be certified as an "act of terrorism" if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

Copyright © 2020 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# EXHIBIT "D"

**FCI Lender Services, Inc.**
Toll Free : (800) 931-2424 Hrs : Mon-Fri 8:00 a.m. - 5:00 p.m. (PT)
PO BOX 27370 Anaheim CA 92809-0112 NMLS # 4920 DRE # 01022780

**MORTGAGE STATEMENT**
**Statement Date:** 04/12/202
Website: www.myfci.com **Email:** help@myfci.co

+ 0214695 000000253 09FCI3 00946001
MARAT GOKHBERG
104 W END AVE UNIT PH-3
BROOKLYN NY 11235-4952

| | |
|---|---|
| **Account Number:** | 399526971 |
| **Payment Due Date:** | 05/01/2025 |
| **Amount Due:** | **$66,148.59** |

Automatic ACH Payment is Scheduled for 05/01/2025. If payment is received after 05/12/2025, a $1,115.63 late Fee will be charged.

## ACCOUNT INFORMATION

| | | | |
|---|---|---|---|
| Outstanding Principal | $1,202,834.57 | Remaining Term (Months) | 9 |
| Interest Rate | 11.130% | Deferred Amounts | $0.00 |
| Escrow Balance | $0.00 | Restricted Suspense | $0.00 |
| Suspense Balance | $0.00 | Loan Maturity Date | 1/1/2026 |
| Prepayment Penalty | NO | Payment Type | Interest Only |
| Next Interest Rate | - | | PYMT/Fixed Rate |
| Change Date | - | Next Due Date | 5/1/2025 |
| Accrual Rate | 0.000% | | |

**Property Address** 3826 NE 171 St North Miami Beach, FL 33160

## EXPLANATION OF AMOUNT DUE

| | |
|---|---|
| Principal | $0.00 |
| Interest | $11,156.29 |
| Escrow (Taxes and/or Insurance) | $0.00 |
| **Regular Monthly Payment** | **$11,156.29** |
| Accrued Late Charges | $0.00 |
| Suspense Balance | $0.00 |
| Other Accrued Fees | $54,987.66 |
| Other Amounts Due | $0.00 |
| Past Due Payments | $4.64 |
| **TOTAL AMOUNT DUE** | **$66,148.59** |

## TRANSACTION ACTIVITY (2/12/2025 - 4/12/2025) To view all transactions please log into www.myfci.com

| Date | Description | Charges | Payments | Date | Description | Charges | Payments |
|---|---|---|---|---|---|---|---|
| 04/01/2025 | Regular Payment Received | $0.00 | $11,156.29 | 03/27/2025 | Lender Placed Insurance | $54,987.66 | $0.00 |
| 03/03/2025 | Regular Payment Received | $0.00 | $11,156.29 | | | | |

## PAST PAYMENTS BREAKDOWN

| | Paid Since Last Statement | Paid year to Date |
|---|---|---|
| Principal: | $0.00 | $0.00 |
| Interest: | $11,156.29 | $44,522.99 |
| Escrow (Taxes and/or Insurance): | $0.00 | $0.00 |
| Fees: | $0.00 | $0.00 |
| *Partial Payment (Unapplied/Suspense): | $0.00 | $0.00 |
| Service Fee Paid: | $0.00 | $0.00 |
| Others: | $0.00 | $0.00 |
| **TOTAL:** | **$11,156.29** | **$44,522.99** |

**If You Are Experiencing Financial Difficulty:**
See back for info about Mortgage Counseling or assistance.

## ACCOUNT HISTORY

**Recent Payment Account History:**
* Payment due 11/01/2024: Fully Paid on 11/01/2024
* Payment due 12/01/2024: Fully Paid on 12/02/2024
* Payment due 01/01/2025: Fully Paid on 01/02/2025
* Payment due 02/01/2025: Fully Paid on 02/03/2025
* Payment due 03/01/2025: Fully Paid on 03/03/2025
* Payment due 04/01/2025: Fully Paid on 04/03/2025
* Current Payment Due 05/01/2025: $11,156.29
**Total: $66,148.59 due.**
**You must pay this amount to keep your loan current.**

## IMPORTANT MESSAGES

**\*Partial Payments:** Any partial payments received by FCI are not applied to your mortgage, but instead are held in a separate suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.

**If your loan was recently transferred for servicing:** Figures on this statement are based upon data from your prior servicer and may be subject to change.

**Notice to Customers in Bankruptcy:** Please see the back side of this Statement for important information.

**All Notices of Error and Requests Information must be mailed to:** FCI Lender Services, Inc. - Attn: Consumer Requests, P.O. Box 28960, Anaheim, CA 92809.

-----------PLEASE DETACH THE BOTTOM PORTION OF THIS STATEMENT, RETURN IT WITH YOUR PAYMENT AND RETAIN THE TOP PORTION FOR YOUR RECORDS-----------

**For details as to all borrower payment options visit the FCI website at www.myfci.com**

FCI Lender Services, Inc.
PO Box 27370

**AMOUNT DUE**

# FCI Lender Services, Inc.

**MORTGAGE STATEMENT**

Toll Free : (800) 931-2424 Hrs : Mon-Fri 8:00 a.m. - 5:00 p.m. (PT)

**Statement Date:** 04/12/2025

PO BOX 27370 Anaheim CA 92809-0112 NMLS # 4920 DRE # 01022780

**Website:** www.myfci.com **Email:** help@myfci.com

+ 0214695 000000254 09FCI3 00946001
MARAT GOKHBERG
104 W END AVE PH 3
BROOKLYN NY 11235-4956

| | |
|---|---|
| **Account Number:** | 399530430 |
| **Payment Due Date:** | 05/01/2025 |
| **Amount Due:** | **$66,135.13** |

Automatic ACH Payment is Scheduled for 05/01/2025. If payment is received after 05/12/2025, a $1,100.74 late Fee will be charged.



## ACCOUNT INFORMATION

| | | | |
|---|---|---|---|
| Outstanding Principal | $1,186,778.01 | Remaining Term (Months) | 9 |
| Interest Rate | 11.130% | Deferred Amounts | $0.00 |
| Escrow Balance | $0.00 | Restricted Suspense | $0.00 |
| Suspense Balance | $0.00 | Loan Maturity Date | 1/1/2026 |
| Prepayment Penalty | NO | Payment Type | Interest Only |
| Next Interest Rate | | | PYMT/Fixed Rate |
| Change Date | - | Next Due Date | 5/1/2025 |
| Accrual Rate | 0.000% | | |

**Property Address** 3830 NE 171 St North Miami Beach, FL 33160

## EXPLANATION OF AMOUNT DUE

| | |
|---|---|
| Principal | $0.00 |
| Interest | $11,007.37 |
| Escrow (Taxes and/or Insurance) | $0.00 |
| **Regular Monthly Payment** | **$11,007.37** |
| Accrued Late Charges | $0.00 |
| Suspense Balance | $0.00 |
| Other Accrued Fees | $55,042.66 |
| Other Amounts Due | $0.00 |
| Past Due Payments | $85.10 |
| **TOTAL AMOUNT DUE** | **$66,135.13** |

## TRANSACTION ACTIVITY (2/12/2025 - 4/12/2025) To view all transactions please log into www.myfci.com

| Date | Description | Charges | Payments | Date | Description | Charges | Payments |
|---|---|---|---|---|---|---|---|
| 04/01/2025 | Regular Payment Received | $0.00 | $11,007.37 | 03/25/2025 | Demand Fee-By Borrower | $30.00 | $0.00 |
| 03/25/2025 | PENDING INVOICE | $54,987.66 | $0.00 | 03/03/2025 | Regular Payment Received | $0.00 | $11,007.37 |

## PAST PAYMENTS BREAKDOWN

| | Paid Since Last Statement | Paid year to Date |
|---|---|---|
| Principal: | $0.00 | $0.00 |
| Interest: | $11,007.37 | $44,003.19 |
| Escrow (Taxes and/or Insurance): | $0.00 | $0.00 |
| Fees: | $0.00 | $0.00 |
| *Partial Payment (Unapplied/Suspense): | $0.00 | $0.00 |
| Service Fee Paid: | $0.00 | $0.00 |
| Others: | $0.00 | $0.00 |
| **TOTAL:** | **$11,007.37** | **$44,003.19** |

**If You Are Experiencing Financial Difficulty:**
**See back for info about Mortgage Counseling or assistance.**

## ACCOUNT HISTORY

**Recent Payment Account History:**

* Payment due 11/01/2024: Fully Paid on 11/01/2024
* Payment due 12/01/2024: Fully Paid on 12/02/2024
* Payment due 01/01/2025: Fully Paid on 01/02/2025
* Payment due 02/01/2025: Fully Paid on 02/03/2025
* Payment due 03/01/2025: Fully Paid on 03/03/2025
* Payment due 04/01/2025: Fully Paid on 04/01/2025
* Current Payment Due 05/01/2025: $11,007.37

**Total: $66,135.13 due.**
**You must pay this amount to keep your loan current.**

## IMPORTANT MESSAGES

**\*Partial Payments:** Any partial payments received by FCI are not applied to your mortgage, but instead are held in a separate suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage.

**If your loan was recently transferred for servicing:** Figures on this statement are based upon data from your prior servicer and may be subject to change.

**Notice to Customers in Bankruptcy:** Please see the back side of this Statement for important information.

**All Notices of Error and Requests Information must be mailed to:** FCI Lender Services, Inc. - Attn: Consumer Requests, P.O. Box 28960, Anaheim, CA 92809.

-----------PLEASE DETACH THE BOTTOM PORTION OF THIS STATEMENT, RETURN IT WITH YOUR PAYMENT AND RETAIN THE TOP PORTION FOR YOUR RECORDS-----

**For details as to all borrower payment options visit the FCI website at www.myfci.com**

FCI Lender Services, Inc.

**AMOUNT DUE**

# EXHIBIT "C"

# LOAN AGREEMENT

This Agreement, made this 1st day of February, 2025, between **Alexander Berezovsky**, residing at 1627 NE Miami Gardens Dr., apt.229 Miami Gardens 33179 (hereinafter "Lender"), and **Steve Ostrovskiy**, residing at 3000 Riverland Rd., Ft. Lauderdale FL 33312 (hereinafter "Borrower").

1. Loan Amount: Lender agrees to lend Borrower the sum of $200,000 (the "Loan"). Closing cost (fees) $15,000

2. Interest: The Loan shall bear interest at a rate of 2% per month, or $4,000, payable monthly

3. Repayment: Borrower agrees to repay the Loan in full, including  unpaid accrued interest on August 1, 2025.

4. Collateral: As security for the Loan, the Borrower pledges the following collateral: single family house located at 3000 Riverland Rd., Fort Lauderdale Fl 33312

5. Default: If the Borrower fails to make any payment when due, or if the collateral is sold or otherwise disposed of, the Lender may declare the entire Loan immediately due and payable.

6. Remedies: Upon default, the Lender may pursue any legal remedies available to enforce the terms of this Agreement, including the sale of the collateral.

5. Governing Law: This Agreement shall be governed by and construed in accordance with the laws of the State of Florida.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

LENDER: Berezovsky Alexander                    BORROWER: Steve Ostrovskiy

Signature of Notary Public                       Signature of Notary Public
(stamp)                                          (stamp)

VALERIA NIKITIN                                  VALERIA NIKITIN
Notary Public - State of Florida                 Notary Public - State of Florida
Commission # HH 575819                           Commission # HH 575819
My Comm. Expires Sep 24, 2028                     My Comm. Expires Sep 24, 2028
Bonded through National Notary Assn.             Bonded through National Notary Assn.

## PROMISSORY NOTE

Date of Note:          December 10, 2024

Amount of Note:        $500,000.00

Maturity Date:         July 1, 2024, unless otherwise extended and/or accelerated pursuant to and in accordance with the terms and conditions set forth in this Note or extended as provided herein.

Property:     **3000 RIVERLAND RD FORT LAUDERDALE, FL 33312**

**IN&OUT ALL ACCESS SYSTEMS INC., a Florida corporation,** whose address is 1200 N FEDERAL HWY, SUITE A, HOLLYWOOD, FL 33020 (the "Borrower"), hereby covenants and promises to pay to the order of **BLUE REEF GROUP INC, a Florida corporation,** its successors and/or assigns as their interests may appear, whose address is **9455 COLLINS AVE, SUITE 307, SURFSIDE, FL 33154** ( collectively the "Lender"), or at such other place as Lender may designate to Borrower in writing from time to time, in legal tender of the United States, **FIVE HUNDRED THOUSAND AND 00/100 Dollars ONLY ($500,000.00),** together with all accrued interest, which shall be due and payable upon the following terms and conditions contained in this Promissory Note (this "Note") and the Mortgage Deed (as defined herein).

### A.     Interest Rate:

(a)     Interest shall accrue on the unpaid principal balance of this Note from the date hereof at a fixed rate per annum equal to EIGHTEEN PERCENT (18.00%) (the "Interest Rate").

(b)     Interest shall be calculated on the basis of a three hundred sixty five (365) day year consisting of twelve (12) months.

### B.     Payment Terms:

Commencing on January 1, 2025 and continuing on the FIRST (1st) day of each month thereafter, Borrower shall make equal monthly payments of **interest only** in the amount of **$7,500.00** each. Unless this Note is otherwise accelerated in accordance with the terms and conditions hereof, the entire outstanding principal balance of this Note plus all accrued interest shall be due and payable in full on July 1, 2025 (the "Maturity Date").

### C.     Security:

This Note is secured, in part, by various mortgage documents that are more particularly described in that certain Mortgage and Other Loan Documents (the "Loan Documents") of even date herewith to be recorded in the Public Records of Broward County, Florida (as the same may be amended or modified from time to time, the "Mortgage"), granting Lender a lien and security interest in and to certain real and personal property located in Broward County, Florida, as more particularly described in the Mortgage.

### D.     Loan Documents:

Page **1** of **6**                    Initial _S_ _O_. ____

This Note, the Mortgage, all Riders of even date herewith from Borrower in favor of Lender, and all other documents and instruments executed in connection with this Note are hereinafter individually and/or collectively referred to as the ("Loan Documents").

**E.**     **Default Interest Rate:**

All principal and installments of interest shall bear interest from the date that said payments are due and unpaid or from the date of occurrence of any other Event of Default (as hereinafter defined) under this Note, the Mortgage or any other Loan Document, at a rate equal to the highest rate authorized by applicable law (the "Default Rate").

**F.**     **Prepayment/Prepayment Compensation:**

This Promissory Note may be prepaid in whole or in part **without** a penalty.

Any prepayment under this Note shall be applied to the outstanding principal balance of this Note in any manner determined by Lender, in its sole discretion. No prepayment shall cause a reamortization of the outstanding principal balance under this Note.

**G.**     **Late Charges:**

Lender may collect a late charge not to exceed an amount equal to five percent (5%) of any installment which is not paid within five (5) days of the due date thereof, to cover the extra expense involved in handling delinquent payments, provided that collection of said late charge shall not be deemed a waiver by Lender of any of its rights under this Note.  Notwithstanding the foregoing, there shall be no grace period or late charges for payments due on the outstanding principal balance due on the Maturity Date or upon acceleration, as set forth in Section H. below, but such outstanding balance shall accrue interest at the Default Rate. The late charge is intended to compensate the Lender for administrative and processing costs incident to late payments. The late charge payments are not interest. The late charge payment shall not be subject to rebate or credit against any other amount due. Any late charge shall be in addition to any other interest due.

**H.**     **Default and Acceleration:**

If any of the following "Events of Default" occur, at the Lender's option, exercisable in its sole discretion, all sums of principal and interest under this Note shall be accelerated and become immediately due and payable without notice of default, presentment or demand for payment, protest or notice of nonpayment or dishonor, or other notices or demands of any kind or character, and the Lender shall be immediately entitled to exercise all of its available remedies under the Loan Documents:

    a.     Borrower fails to perform any obligation under this Note to pay principal or interest when due; or

    b.     Borrower fails to perform any other obligation, liability or indebtedness under the Loan Documents to pay money when due; or

    c.     A "Default" or an "Event of Default" (as defined in each respective document) beyond any applicable notice and cure period occurs under any of the Loan Documents; or

    d.     Borrower becomes the subject of any bankruptcy or other voluntary or involuntary proceeding, in or out of court, for the adjustment of debtor-creditor relationships; or

Initial _S.J_ _____

e.       Any warranty or representation made or deemed made in any Loan Document or furnished to Lender in connection with the loan evidenced by this Note proves materially false, or if of a continuing nature, becomes materially false; or

f.       At Lender's option, any default in payment or performance of any obligation of Borrower beyond any applicable notice and cure period under any other loans, contracts or agreements from Lender to Borrower, as the same may be amended, restated, modified or replaced from time to time; or

g.       Lender determines that it is insecure for any reason.

In any such event, all sums of principal and interest under this Note shall automatically become immediately due and payable without notice of default, presentment or demand for payment, protest or notice of nonpayment or dishonor, or other notices or demands of any kind or character. All persons now or at any time liable for payment of this Note hereby waive presentment, protest, notice of protest and dishonor. The Borrower expressly consents to any extension or renewal, in whole or in part, and all delays in time of payment or other performance which Lender may grant at any time and from time to time without limitation and without any notice or further consent of the undersigned.

The remedies of Lender as provided herein, or in the Mortgage, the Loan Agreement or the other Loan Documents shall be cumulative and concurrent and may be pursued singularly, successively or together, at the sole discretion of Lender, and may be exercised as often as the occasion therefor shall arise. The Lender may, in the sole discretion of Lender, accept payments made by Borrower after any default has occurred, without waiving any of Lender's rights herein.

**I.       Costs:**

In the event that this Note is collected by law or through attorneys at law, or under advice therefrom (whether such attorneys are employees of Lender or an affiliate of Lender or are outside counsel), Borrower and any endorser, guarantor or other person primarily or secondarily liable for payment hereof hereby, severally and jointly agree to pay all costs of collection, including attorneys' fees, including charges for paralegals, appraisers, experts and consultants working under the direction or supervision of Lender's attorneys; costs for evaluating preserving or disposing of any collateral granted as security for payment of this Note, including the costs of any audits, environmental inspections which Lender may deem necessary form time to time; any premiums for property insurance purchased on behalf of Borrower or on behalf of the owners of any collateral pursuant to any Mortgage relating to any collateral, or any other charges permitted by applicable law whether or not suit is brought, and whether incurred in connection with collection, trial, appeal, bankruptcy or other creditors' proceedings or otherwise.

**J.       Loan Charges:**

Nothing herein contained, nor any transaction related thereto, shall be construed or so operate as to require Borrower or any person liable for the repayment of same, to pay interest in an amount or at a rate greater than the maximum allowed by applicable law. Should any interest or other charges paid by Borrower, or any parties liable for the payment of the loan made pursuant to this Note, result in the computation or earning of interest in excess of the maximum legal rate of interest permitted under the law in effect while said interest is being earned, then any and all of such excess shall be and is waived by Lender, and all such excess shall be automatically credited against and in reduction of the principal balance, and any portion of the excess that exceeds the principal balance shall be paid by Lender to Borrower or any parties liable for the payment of the loan made pursuant to this Note so that under no

circumstances shall the Borrower, or any parties liable for the payment of the loan hereunder, be required to pay interest in excess of the maximum rate allowed by applicable law.

**K.      Jurisdiction:**

The laws of the State of Florida shall govern the interpretation and enforcement of this Note. In the event that legal action is instituted to collect any amounts due under, or to enforce any provision of, this instrument, Borrower and any endorser, guarantor or other person primarily or secondarily liable for payment hereof consent to, and by execution hereof submit themselves to, the jurisdiction of the courts of the State of Florida, and, notwithstanding the place of residence of any of them or the place of execution of this instrument, such litigation may be brought in or transferred to a court of competent jurisdiction in and for Broward County, Florida.

**L.      Assignment:**

Lender shall have the unrestricted right at any time and from time to time and without Borrower's consent, to assign all or any portion of its rights and obligations hereunder to one or more lenders or Purchasers (each, an "Assignee") under this Note and the Loan Documents and all information now or hereafter in its possession relating to the Borrower (all rights of privacy hereby being waived, and to retain any compensation received by Lender in connection with any such transaction and Borrower agrees that it shall execute such documents, including without limitation, the delivery of an estoppels certificate and such other documents as Lender shall deem necessary to effect the foregoing. The Borrower hereby waive any notice of the transfer of this Note by the Lender or by any other subsequent holder of this Note and agree to be bound by the terms of the Note subsequent to any transfer and agree that the terms of the Note maybe fully enforced by any subsequent holder of this Note.

**M.      Non-Waiver:**
The failure at any time of Lender to exercise any of its options or any other rights hereunder shall not constitute a waiver thereof, nor shall it be a bar to the exercise of any of its options or rights at a later date. All rights and remedies of Lender shall be cumulative and may be pursued singly, successively or together, at the option of Lender.

**N.      Right of Setoff:**
In addition to all liens upon and rights of setoff against the Borrower's money, securities or other property given to the Lender by law, the Lender shall have, with respect to the Borrower's obligations to the Lender under this Note and to the extent permitted by law, a contractual possessory security interest in and a contractual right of setoff against, and the Borrower hereby grants the Lender a security interest in, and hereby assigns, conveys, delivers, pledges and transfers to the Lender, all of the Borrower's right, title and interest in and to, all of the Borrower's deposits, moneys, securities and other property now or hereafter in the possession of or on deposit with, or in transit to, the Lender, whether held in a general or special account or deposit, whether held jointly with someone else, or whether held for safekeeping or otherwise, excluding, however, all IRA, Keogh, and trust accounts. Every such security interest and right of setoff may be exercised without demand upon or notice to the Borrower. Every such right of setoff shall be deemed to have been exercised immediately upon the occurrence of an Event of Default hereunder without any action of the Lender, although the Lender may enter such setoff on its books and records at a later time.

**O.      Miscellaneous:**

Page **4** of **6**                         Initial _S.J._ ____

1.   TIME IS OF THE ESSENCE OF THIS NOTE.

2.   It is agreed that the granting to Borrower or any other party of an extension or extensions of time for the payment of any sum or sums due under this Note or under the Mortgage or for the performance of any covenant or stipulation thereof or the taking of other or additional security shall not in any way release or affect the liability of Borrower under this Note or any of the Loan Documents.

3.   This Note may not be changed orally, but only by an agreement in writing, signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

4.   All parties to this Note, whether Borrower, principal, surety, guarantor or endorser, hereby waive presentment for payment, demand, notice, protest, notice of protest and notice of dishonor.

5.   Notwithstanding anything herein to the contrary, the obligations of Borrower under this Note shall be subject to the limitation that payments of interest shall not be required to the extent that receipt of any such payment by Lender would be contrary to provisions of law applicable to Lender limiting the maximum rate of interest which may be charged or collected by Lender. In the event that any charge, interest or late charge is above the maximum rate provided by law, then any excess amount over the lawful rate shall be applied by Lender to reduce the principal sum of the Loan or any other amounts due Lender hereunder.

6.   Borrower acknowledges that Lender shall have no obligation whatsoever to renew, modify or extend this Note or to refinance the indebtedness under this Note upon the maturity thereof, except as specifically provided herein.

7.   Lender shall have the right to accept and apply to the outstanding balance of this Note and all payments or partial payments received from Borrower after the due date therefor, whether this Note has been accelerated or not, without waiver of any of Lender's rights to continue to enforce the terms of this Note and to seek any and all remedies provided for herein or in any instrument securing the same, including, but not limited to, the right to foreclose on such security.

8.   All amounts received by Lender shall be applied to expenses, late fees and interest before principal or in any other order as determined by Lender, in its sole discretion, as permitted by law.

9.   Borrower shall not assign Borrower's rights or obligations under this Note without Lender's prior consent.

10.  The term "Borrower" as used herein, in every instance shall include the makers of this Note, and its heirs, executors, administrators, successors, legal representatives and assigns, and shall denote the singular and/or plural, the masculine and/or feminine, and natural and/or artificial persons whenever and wherever the context so requires or admits.

11.  If more than one party executes this Note, all such parties shall be jointly and severally liable for the payment of this Note.

Initial _S.S._  ____

12.   If any clause or provision herein contained operates or would prospectively operate to invalidate this Note in part, then the invalid part of said clause or provision only shall be held for naught, as though not contained herein, and the remainder of this Note shall remain operative and in full force and effect.

13.   This Promissory Note is to be construed and enforced in accordance with the laws of the State of Florida.

**P.    Waiver of Jury Trial:**

BORROWER AND LENDER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER TO EXTEND TO BORROWER THE LOAN EVIDENCED BY THIS NOTE.

Borrower has duly executed this Note effective as of the date set forth hereinabove.

Witness #1: _____

Print Name: _Ilana Artzy_____

Witness #2: _____

Print Name: _Dana Roscnberg____

**IN&OUT ALL ACCESS SYSTEMS INC,**
**a Florida corporation**

By:_____
**STEVE OSTROVSKIY, President**

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

The foregoing instrument was sworn to, subscribed and acknowledged before me by means of ☒ physical presence or ☐ online notarization this 10th day of December 2024, by STEVE OSTROVSKIY, President of IN&OUT ALL ACCESS SYSTEMS INC, a Florida corporation, who is/are personally known to me or who has/have produced _____FL ID_____, as identification.

_____

ILANA KALICHMAN-ARTZY
Notary Public - State of Florida
Commission # HH 538538
My Comm. Expires Oct 10, 2028
Bonded through National Notary Assn.

Printed Name:_____
Notary Public
My Commission Expires:  / /

Page **6** of 6                    Initial _S.O.____

# UNLIMITED GUARANTY
### (STEVE OSTROVSKIY)

Dated as of December 1 Q 2024

**DEFINITIONS**:

In this Guaranty the following terms shall have the following indicated meanings:

    1.      Borrower: **IN&OUT ALL ACCESS SYSTEMS INC., a Florida corporation**

    2.      Lender: **BLUE REEF GROUP INC**, **a Florida corporation**

    3.      Guarantor: **STEVE OSTROVSKIY, individually**

    4.      Obligations: All indebtedness, liabilities, covenants, promises, agreements, terms, conditions and other obligations of every nature whatsoever (whether secured or unsecured) of the Borrower [including but not limited to under that certain loan (the "Loan") evidenced by that certain Promissory Note of even date executed by Borrower in favor of Lender in the amount of **Five Hundred Thousand Dollars and 00/100 Dollars ($500,000.00)**] to the Lender and all renewals, modifications and extensions thereof howsoever, evidenced, whether now existing or hereafter created or arising, direct or indirect, absolute or contingent, joint or several, liquidated or unliquidated, matured or unmatured, and howsoever now or hereafter owned, held or acquired by Lender, whether through discount, overdraft, purchase, direct loan or as collateral, or otherwise, including without limitation: (i) any letter of credit issued by Lender for the account of Borrower, (ii) all principal and interest, (including, without limitation, all interest accruing after a petition is filed in bankruptcy or similar proceedings, notwithstanding that Borrower's obligation to pay such interest may have ceased to exist by operation of law), (iii) all costs of collection, including reasonable attorneys' fees, paralegals' fees and legal assistants' fees (whether incurred with collection, trial, appeal, bankruptcy proceedings or otherwise notwithstanding that Borrower's obligation to pay such fees may have ceased to exist by operation of law), (iv) all documentary stamp tax and intangible tax (including interest and penalties, if any) determined to be due in connection with any evidence of said indebtedness, obligations and liabilities, and (v) all other amounts which Borrower is obligated to pay Lender under any instruments evidencing, relating to or securing said indebtedness, obligations and liabilities or any part thereof.

    5.      Loan Documents: Collectively (i) that certain Promissory Note to be signed by Borrower payable to the order of Lender in the original principal amount of **$500,000.00** and all renewals, modifications and extensions thereof, howsoever evidenced, whether now existing or hereinafter created (collectively, the "Note"), (ii) that certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Mortgage") dated of even date herewith from Borrower in favor of Lender, and (iiii) any and all other documents evidencing and/or securing the Obligations.

CONSIDERATION:

    As a material inducement to the Lender to extend credit to the Borrower and because the Guarantor is a President of Borrower and will benefit from any credit extended to Borrower, the Guarantor makes this Guaranty.

*S. O.*

<u>TERMS, COVENANTS AND CONDITIONS</u>:

    1.    <u>Nature and Scope of Guaranty</u>.

        1.1    The Guarantor, irrevocably, absolutely and unconditionally guarantees to the Lender, the due and punctual payment and performance of the Obligations.

        1.2    This Guaranty is an absolute and unconditional guaranty of payment and performance and not one of collection and all Obligations guaranteed hereby shall be conclusively presumed to have been created in reliance hereon.

        1.3    Guarantor will make all payments hereunder in lawful money of the United States of America in immediately available funds without set-off or counterclaim.

        1.4    Guarantor's liability hereunder shall remain unchanged irrespective of any invalidity, illegality or unenforceability of or any defense (whether arising by reason of disability, dissolution or liquidation of the Borrower, or lack of corporate, trust, company or partnership power or authority of the Borrower, or otherwise) to the Obligations or any portion thereof, or of any security for the Obligations, or any portion thereof, it being understood and agreed that the Guarantor shall be and remain fully bound hereunder regardless of whether Borrower shall be found not liable on the Obligations or any other guarantor be relieved or released from liability for any reason whatsoever.

        1.5    In case of the death, incompetency, disability, dissolution, liquidation or insolvency (howsoever evidenced) of the Borrower, or in case any bankruptcy, reorganization, debt arrangement, adjustment, composition, or other proceeding under any bankruptcy or insolvency law, or any dissolution, liquidation or receivership proceeding is instituted by or against Borrower or Borrower admits in writing its inability to pay its debts as they mature, all Obligations then existing shall at the option of the Lender, without notice to anyone, immediately become due and payable by the Guarantor.

        1.6    Guarantor acknowledges that Lender has no obligations or duties to Guarantor under this Guaranty.

    2.    <u>Discharge of Guarantor</u>.  Guarantor shall be discharged from liability hereunder only upon the full payment and performance of the Obligations; provided, however, that if any sums paid to and applied by Lender toward the Obligations are thereafter required to be repaid to Borrower or to any affiliate of Borrower, or to any trustee, receiver or other person, by reason of the application of the Bankruptcy Code, the Uniform Fraudulent Transfer Act or any other law relating to creditors' rights generally, then this Guaranty shall be reinstated, <u>ab initio</u>, as if such portion of the Obligations had never been paid.

    3.    <u>Assent to Agreements made by Borrower</u>.  Guarantor assents, without notice to Guarantor, to all terms and agreements heretofore or hereafter made by Borrower with Lender insofar as same may affect the Obligations.

    4.    <u>Consent to Lender's Actions or Inactions Regarding the Borrower, the Guarantor, and the Collateral</u>.  Guarantor consents that Lender may at any time and from time to time, before or after any default by Borrower, with or without further notice to or assent from Guarantor:

        4.1    Either with or without consideration to the Borrower, any guarantor, pledger, or grantor of any collateral, exchange, release, surrender (in whole or in part), or fail to protect or to preserve the value of any collateral now or hereafter held as security for the Obligations, or waive, release, or subordinate any lien or security interest (in whole or in part) in or on any such collateral;

S. D.

4.2     Waive or delay the exercise of any of its rights or remedies against the Borrower or any other person or entity, including, without limitation, any guarantor; notwithstanding any waiver or delay, the Lender shall not be precluded from further exercise of any of its rights, powers or privileges expressly provided for herein or otherwise available, it being understood that all such rights and remedies are cumulative;

4.3     Waive or extend the time of Borrower's performance of any and all terms, provisions and conditions set forth in any instrument or agreement evidencing or relating to the Obligations;

4.4     Release Borrower or any other person or entity, including, without limitation, any guarantor, from all or any portion of the Obligations;

4.5     Proceed against the Guarantor without first proceeding against or joining the Borrower or any guarantor or any endorser of any note or other agreement evidencing the Obligations, or any property securing the payment or performance of the Obligations;

4.6     Renew, extend or modify the terms of the Obligations or any instrument or agreement evidencing or relating to the Obligations;

4.7     Apply payments by the Borrower, the Guarantor, or any other person or entity to the reduction of the Obligations in such manner and in such amounts and at such time or times and in such order and priority as Lender may see fit; and

4.8     Generally deal with the Borrower or any of the security for the Obligations or other person or party as the Lender may see fit.

The Guarantor shall remain bound under this Guaranty notwithstanding any such exchange, release, surrender, subordination, waiver (whether or not such waiver is oral or written), delay, proceeding, renewal, extension, modification, application, act or failure to act, or other dealing described in Subsections 4.1 through 4.8, inclusive, above even though done without notice to or consent from the Guarantor.

5.     <u>Waiver of Notice</u>.   Guarantor waives all notices whatsoever with respect to this Guaranty and with respect to the Obligations, including, but not limited to, notice of:

5.1     The Lender's acceptance of this Guaranty or its intention to act, or its action, in reliance hereon;

5.2     The extension of credit by Lender to Borrower;

5.3     Presentment and demand for payment of the Obligations or any portion thereof;

5.4     Protest and notice of dishonor or non-payment with respect to the Obligations or any portion thereof;

5.5     Any default by Borrower or any pledgor, grantor of security, or any guarantor, including the Guarantor;

5.6     Any other notices to which the Guarantor may otherwise be entitled; and

5.7     Any demand for payment under this Guaranty.

*S. O.*

6. <u>Waiver of Marshalling, Statute of Limitations and Wage Exemption</u>. Guarantor waives (i) any right or claim of right to cause a marshalling of any of Borrower's assets or the assets of any other party now or hereafter held as security for the Obligations, (ii) the benefit of any statute of limitations affecting the liability of Guarantor hereunder, and (iii) any exemption of disposable earnings from attachment or garnishment under Florida Statutes §222.11.

7. <u>Subordination</u>.

7.1     All rights and claims of Guarantor (collectively the "Guarantor Claims") against Borrower or any of Borrower's property now or hereafter existing shall be subordinate and subject in right of payment to the prior payment in full of and the performance of all of the Obligations.

7.2     Until the Obligations have been paid and performed in full and Guarantor shall have performed all of Guarantor's obligations hereunder, Guarantor shall not receive or collect, directly or indirectly, from Borrower or any other party any payment upon the Guarantor Claims, nor seek to realize upon any collateral securing such Guarantor Claims.   Notwithstanding the foregoing, if Guarantor should receive any such payment, Guarantor agrees to hold same in trust for Lender and agrees that Guarantor shall have absolutely no rights in or to or dominion over such payments except to pay them promptly to Lender, and Guarantor hereby covenants to do so.

8. <u>Grant of Security Interest</u>.  To secure the prompt payment and performance of the Obligations, the Guarantor grants to Lender a continuing first lien security interest in the Guarantor Claims and in all property of the Guarantor delivered concurrently herewith or now, or at any time hereafter in the possession of the Lender, and all proceeds of all such property.  The Guarantor agrees that the Lender shall have the rights and remedies of a secured party under the Uniform Commercial Code-Secured Transactions as adopted by the State of Florida with respect to all of the aforesaid property, including, without limitation, the right to sell or otherwise dispose of any or all of such property.  The Lender may, without further notice to anyone, apply or set off any balances, credits, deposits, accounts, monies or other indebtedness at any time created by or due from the Lender to the Guarantor against the amounts due hereunder.  Any notification of intended disposition of any property required by law shall be deemed reasonably and properly given if given at least five (5) calendar days before such disposition.

9. <u>Subrogation Rights</u>.  Guarantor will not assert any right to which Guarantor may be or may become entitled, whether by subrogation, reimbursement, exoneration, contribution, indemnification or otherwise, against Borrower or any other guarantor, or against any of their respective properties, by reason of the payment and performance by the Guarantor of its obligations under this Guaranty.

10. <u>Representations and Warranties</u>.

10.1     Guarantor represents and warrants to Lender that:

(a)     The execution, delivery and performance by Guarantor of this Guaranty, (i) does not require the approval of any governmental authority, whether federal, state, county, or municipal (collectively the "<u>Governmental Authority</u>"), and (ii) will not violate any law, order, regulation, authorization or similar matters (collectively the "<u>Governmental Requirements</u>"), any indenture, agreement or other instrument to which Guarantor is a party or by which Guarantor or any of Guarantor's property is bound, or be in conflict with, result in a breach of or constitute (with due notice or the lapse of time, or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of Guarantor's properties or assets, except as contemplated by the provisions of this Guaranty.

(b)     This Guaranty when executed and delivered by Guarantor will constitute the legal, valid and binding obligations of Guarantor enforceable in accordance with the terms hereof.

S. J.

(c)      There are no judgments outstanding against Guarantor and there is no action, suit, proceeding, or investigation now pending (or to the best of Guarantor's knowledge after diligent inquiry threatened) against, involving or affecting Guarantor or any of Guarantor's properties or any part thereof, at law, in equity or before any Governmental Authority that if adversely determined as to Guarantor, would result in an adverse change in the business or financial condition of Guarantor, or Guarantor's operation and ownership of any of its properties, nor is there any basis for such action, suit, proceeding, or investigation.

(d)      All  balance sheets, tax returns, statements of profit and loss and other financial data that have been given to Lender with respect to Guarantor, (i) are complete and correct in all material respects; (ii) do accurately present the financial condition of Guarantor as of the dates, and the results of Guarantor's operations, for the periods for which the same have been and will be furnished; and (iii) have been prepared in accordance with generally accepted accounting principles consistently followed throughout the periods covered and to be covered thereby; all balance sheets disclose all known liabilities, direct and contingent, as of their respective dates; and there has been no change in the condition of the Guarantor, financial or otherwise, since the date of the most recent financial statements given to Lender with respect to Guarantor other than changes in the ordinary course of business, none of which changes have been adverse.

(e)      Guarantor is not insolvent and will not be rendered insolvent by the execution, delivery, payment and performance of this Guaranty.

10.2      Guarantor acknowledges that the Lender has relied upon the Guarantor's representations, has made no independent investigation of the truth thereof and is not charged with any knowledge contrary thereto that may have been received by any officer, director, manager, shareholder, member, employee, trustee or shareholder of Lender.  Guarantor further acknowledges that it has not been induced to execute and deliver this Guaranty as a result of, and is not relying upon, any representations, warranties, agreements, or conditions, whether express or implied, written or oral, by Lender or by any officer, director, employee, trustee, manager, member or shareholder of Lender.

11.      Financial Statements/Tax Returns.  Guarantor will furnish to Lender upon written demand, financial statements of Guarantor prepared and certified in a manner satisfactory to Lender, all in such detail as Lender may require and a copy of Guarantor's annual income tax return upon written demand from Lender.

12.      Transfer of Assets. Until the Obligations have been paid and performed in full and Guarantor shall have performed all of Guarantor's obligations hereunder, Guarantor shall not, directly or indirectly, sell, convey, or transfer or permit to be sold, conveyed, or transferred any of Guarantor's assets to any party or entity to which Guarantor is related or in which Guarantor has an interest.

13.      Modification. No agreement unless in writing and signed by an authorized officer, manager, member or shareholder of Lender and no course of dealing between Guarantor and Lender shall be effective to change or modify or to discharge in whole or in part this Guaranty.  No waiver of any rights or powers of Lender or consent by it shall be valid unless in writing signed by an authorized officer, manager or member of Lender and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

14.      Cost of Enforcement. Guarantor agrees that, whenever an attorney is used to obtain payment or performance under or otherwise enforce this Guaranty or to enforce, declare, or adjudicate any rights or obligations under this Guaranty, whether by suit or any other manner whatsoever, reasonable attorneys' fees, paralegals' fees, legal assistants' fees and costs (whether incurred in collection, litigation, bankruptcy proceedings, appeals, or otherwise) shall be payable by Guarantor to Lender.

15.   <u>Submission to Jurisdiction</u>.

(a)   Guarantor irrevocably and unconditionally (a) agrees that any suit, action, or other legal proceeding arising out of or relating to this Guaranty shall be brought in a court of record of the State of Florida in **Broward** County, in the United States District Court for the Southern District of Florida, or in any other court of competent jurisdiction located in **Broward** County, Florida; (b) consents to the jurisdiction of each such court in any such suit, action, or proceeding; (c)  waives any objection which it may have to the laying of venue of any such suit, action, or proceeding in any of such courts; and (d) agrees that service of any court paper may be effected on Guarantor by mail, addressed and mailed as provided in Section 16 hereof or in such other manner as may be provided under applicable laws or court rules in said State.

(b)   Guarantor hereby appoints **Ilana Artzy 19390 Collins Avenue, Suite B3, Sunny Isles, Florida 33160**, to serve as agent for Guarantor in order to accept service of process on his behalf. Guarantor shall provide Lender with thirty (30) days prior written notice prior to any change in who shall serve as agent for Guarantor under this Paragraph 15(b). Said notice shall contain the name, address and telephone number of the new agent. Lender shall have ten (10) business days to either accept or reject any new agent to be determined in Lender's sole discretion. All authorizations and agencies herein contained with respect to the previous sentence are irrevocable and powers coupled with an interest until the Mortgagor and/or Guarantor have paid and performed in full all of their Obligations under this Guaranty, the Note and all other Loan Documents, as applicable.

16.   <u>Notice</u>.  Any notice or other communication hereunder shall be in writing and shall be effective upon receipt (or refusal of receipt) if delivered personally, or sent by overnight courier if signature for the receiving party is obtained, or sent by certified or registered mail, postage prepaid, to the other party at the address set forth below:

Guarantor's address for the purpose of this Section 16 is:
> **STEVE OSTROVSKIY**
> **1200 N FEDERAL HWY**
> **SUITE A, HOLLYWOOD, FL 33020**

With a copy to:
> **Ilana Artzy, Esq.**
> **The Law Office of Ilana Kalichman-Artzy, PA**
> **19390 Collins Avenue, Suite B3**
> **Sunny Isles, Florida 33160**

Borrower's address for the purpose of this Section 16 is:
> **IN&OUT ALL ACCESS SYSTEMS INC., a Florida corporation**
> **1200 N FEDERAL HWY**
> **SUITE A, HOLLYWOOD, FL 33020**
> **Attn: STEVE OSTROVSKIY, President**

Lender's address for the purpose of this Section 16 is:
> **BLUE REEF GROUP INC**, **a Florida corporation**
> 9455 COLLINS AVE, SUITE 307
> SURFSIDE, FL 33154

Any party may designate a change of address by written notice to the other party, received by such other party at least ten (10) days before such change of address is to become effective. This Guaranty does not require that Lender give Guarantor any notice, demand, or request and this Section 16 shall not be construed to create such a requirement.

S. O.

17.     Choice of Law.  This Guaranty shall be construed, interpreted, enforced and governed by and in accordance with the laws of the State of Florida (excluding the principles thereof governing conflicts of law), and federal law, in the event federal law permits a higher rate of interest than Florida law.

18.     Gender and Number.  In this Guaranty, wherever the context so requires, the use    of any gender shall include all other genders, and words in the singular shall include the plural and the plural shall include the singular.

19.     Successors and Assigns.  This Guaranty shall inure to the benefit of the Lender, its successors and assigns, and shall be binding upon the Guarantor and its respective heirs, personal representatives, successors and assigns.

20.     Savings Clause.  If any provision or portion of this Guaranty is declared or found by a court of competent jurisdiction to be unenforceable or null and void, such provision or portion thereof shall be deemed stricken and severed from this Guaranty, and the remaining provisions and portions thereof shall continue in full force and effect.

21.     Headings.  The captions of Sections of this Guaranty are for convenient reference only, and shall not affect the construction or interpretation of any of the terms and provisions set forth in this Guaranty.

22.     Joint and Several Liability.  The liability of the Guarantor hereunder shall be joint and several with the Borrower and all other guarantors of the Obligations.

23.     Approval, Consent, Etc.  Except as specifically provided otherwise under this document, any consent, approval, option or judgment of Lender hereunder shall be in writing and shall be given or not given by Lender in Lender's sole and absolute discretion and Lender shall not be required to act reasonably.

24.     Certain Words.  The words "hereof", "herein", "hereunder", and other similar compounds of the word "here" shall mean and refer to the entire instrument and not to any particular article, provision or paragraph.

25.     Waiver of Trial by Jury.  LENDER AND GUARANTOR HEREBY KNOWINGLY, IRREVOCABLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY ACTION, PROCEEDING OR COUNTERCLAIM BASED ON THIS GUARANTY, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS GUARANTY OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS GUARANTY, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER ACCEPTING THIS GUARANTY FROM GUARANTOR AND FOR GUARANTOR GIVING THIS GUARANTY TO LENDER.

**[SIGNATURES APPEAR ON THE FOLLOWING PAGE]**

**IN WITNESS WHEREOF**, Guarantor, intending to be legally bound, has duly executed and delivered this Unlimited Guaranty as of the day and year first above written.

"WITNESSES"                                "GUARANTOR"

Print Name: Ilana Artzy

Print Name: Dana Rosentd

                                  **STEVE OSTROVSKIY**, individually

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

The foregoing instrument was sworn to, subscribed and acknowledged before me by means of ☐ physical presence or ☐ online notarization this 10th day of December 2024, by STEVE OSTROVSKIY, , who is/are personally known to me or who has/have produced ___FL ID___, as identification.

ILANA KALICHMAN-ARTZY
Notary Public - State of Florida
Commission # HH 538538
My Comm. Expires Oct 10, 2028
Bonded through National Notary Assn.

Printed Name:_____
Notary Public
My Commission Expires: / /

This instrument prepared by:
After recording return to:
ILANA KALICHMAN-ARTZY, ESQ.
LAW OFFICE OF ILANA KALICHMAN-ARTZY, PA
19390 COLLINS AVENUE, SUITE B3
SUNNY ISLES, FLORIDA 33160

2nd Mortgage

# Real Estate Mortgage

**THIS IS A BALLOON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($500,000.00), TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.**

THIS MORTGAGE made this 10th day of December, 2024, between **IN&OUT ALL ACCESS SYSTEMS INC., a Florida corporation** whose address is 1200 N FEDERAL HWY, SUITE A, HOLLYWOOD, FL 33020, herein called Mortgagor, in consideration of the sum named in the promissory note herein described received from **BLUE REEF GROUP INC, a Florida corporation** whose address is 9455 COLLINS AVE, SUITE 307, SURFSIDE, FL 33154, herein called Mortgagee, (the terms "Mortgagor" and "Mortgagee" include all parties in each capacity to this instrument and their respective heirs, personal representatives, successors and assigns; the term "note" includes all promissory notes described herein) Mortgagor hereby mortgages to Mortgagee the real property in Broward County, Florida, described as:

> SEE EXHIBIT "A" WHICH IS ATTACHED HERETO AND MADE A PART HEREOF BY THIS REFERENCE;

TOGETHER with all easements, rights of way, strips and gores of land, streets, alleys, ways, sewer rights, rights, titles, interests and appurtenances whatsoever, in any way belonging, relating or appertaining to any of the Mortgaged Property, improvements now or hereafter made thereon, fixtures attached thereto, any furniture or furnishings located thereon or therein and any reversions, remainders, rents, royalties, issues and profits thereof as security for the payment of the promissory note, a copy of which is attached (collectively the "Mortgaged Property").

AND Mortgagor hereby covenants:

1.    That Mortgagor is in actual possession and seized of said Mortgaged Property in fee simple with full power and lawful right to mortgage the same; that said Mortgaged Property is free from all liens and encumbrances except as set forth herein; that Mortgagor fully warrants the title to said real property and will defend the same against lawful claims of all persons

*Real Estate Mortgage*

*S.O.* *Page 1 of 8* _____

*$500,000 Loan*

whomsoever.

2.     To pay all money required by said note and this mortgage, or either, promptly when due.

3.     To pay all taxes, assessments, levies, liabilities, obligations and encumbrances of every description now on or which may hereafter accrue on said Mortgaged Property, this mortgage and the debt secured hereby, or any of these, when due.  If any part thereof not paid when due, Mortgagee may pay it without waiving the option to foreclose this mortgage or any other right hereunder.

4.     To pay all costs and expenses together with reasonable attorney's fees (including appellate proceedings) incurred by Mortgagee because of any default by Mortgagor under this mortgage and said note, or either.

5.     (a)  To keep the improvements now or hereafter on said property insured against loss by fire or other hazards included in the terms "extended coverage" and "other perils" in the amount secured by this mortgage by an insurer approved by Mortgagee.  The policy shall be held by and made payable to Mortgagee, without contribution as Mortgagee's interest may appear.  If any money becomes payable under such policy, then all checks for said money will be made payable to Mortgagee, instead of to Mortgagor and Mortgagee jointly, and the proceeds shall be first applied at the option of the Mortgagee, to either reduce the indebtedness secured hereby or to restore or repair the mortgaged property to the condition it was immediately before the loss occurred and if there be any excess or if the property not so restored then Mortgagee may permit Mortgagor to use it, or any part thereof, for other purposes without waiving or impairing any lien or right hereunder.  If Mortgagor fails to obtain such policy, Mortgagee may procure it and pay therefor without waiving the option to foreclose this mortgage or any other right hereunder.

(b)  If required by the Mortgagee, after default under the Note or Mortgage, Mortgagor shall pay to the Mortgagee on the date of each regular installment of interest as required by the Note secured hereby (or on the first day of each month if the interest payments are due other than monthly) until the Note is fully paid, an amount equal to one-twelfth (1/12) or such proportionate share of the yearly premium for insurance as shall enable Mortgagee to pay for the annual insurance premiums when due, and/or an amount equal to one-twelfth (1/12) or such proportionate share of the yearly taxes and assessments as estimated by the Mortgagee to be sufficient to enable the Mortgagee to pay at least thirty (30) days before they become due, all taxes, assessments, and other similar charges levied or assessed against the Mortgaged Property, or any part thereof.  Such added payments shall not be, nor be deemed to be, trust funds, but may be commingled with the general funds of the Mortgage and no interest shall be payable to Mortgagor with respect thereof.  Upon demand of the Mortgagee, the Mortgagor agrees to deliver to the Mortgagee such additional monies as are necessary to make up any deficiencies in the amounts necessary to enable the Mortgagee to pay such insurance premiums when due and/or to make up any deficiencies in the amounts necessary to enable the Mortgagee to pay such Mortgagor in the performance of any of the terms, covenants and conditions in this Mortgage or

the Note secured hereby, the Mortgagee may apply any amount reserved under this Paragraph remaining to the reduction of the principal sum outstanding under the Note, or any other sum secured hereby, in such manner as the Mortgagee shall determine.

6.      To permit, commit or suffer no waste, impairment or deterioration of said property or any part thereof.

7.      That if said property, or any part thereof, is taken by eminent domain, Mortgagee shall have the right to receive and apply all money paid for such taking to the payments last due on the debt secured hereby or may permit Mortgagor to use it, or any part thereof, for other purposes without waiving or impairing any lien or right under this mortgage.  If the remaining part of said property is inadequate security for the unpaid balance of said debt, Mortgagee may accelerate payment thereof immediately.

8.      That if Mortgagee shall hold another mortgage or lien on said property, a default under such other mortgage or lien shall constitute a default under this mortgage also.  Any default under this mortgage shall likewise constitute a default under such other mortgage or lien.  If foreclosure proceedings under any mortgage or lien (whether held by Mortgagee or another) affecting said Mortgaged Property are instituted, this shall constitute a default under this mortgage.

9.      That Mortgagee may forbear to enforce defaults under this mortgage and said note, or either, or may extend the time for payment of any money secured hereby or may take other or additional security and may deal directly with any owner of said Mortgaged Property in all respects pertaining to this mortgage and said note, or either, without notice to or the consent of any person liable under this mortgage and said note, or either, and without discharging or affecting the liability of any person liable under this mortgage and said note, or either.

10.     That the rents, profits, royalties, income, issues and revenues of said property (including any personal property located thereon or therein) are assigned and pledged as further security for the payment of the debt secured hereby with the right (but no duty) on the part of Mortgagee to demand and receive and apply them on said debt at any time after a default hereunder.  If suit is instituted to foreclose or reform this mortgage or to determine the validity or priority thereof, Mortgagee shall be entitled to appointment of a receiver pendente lite without notice for said property and of all rents, income, profits, issues and revenue thereof.  It is covenanted and agreed that the court shall forthwith appoint a receiver of said property and of such rents, income, profits, royalties, issues and revenues. Such appointment shall be made as a matter of strict right to Mortgagee without reference to the adequacy or inadequacy of the value of the property hereby mortgaged or to the solvency or insolvency of Mortgagor.

11.     That if any dispute arises involving said note and this mortgage, or either, wherein Mortgagee incurs any costs  (regardless of whether or not legal proceedings are instituted) or if any action or proceeding (including appellate proceedings) shall be maintained by any person

*Real Estate Mortgage*

*Page 3 of 8*

S.O.

*$500,000 Loan*

other than Mortgagee wherein Mortgagee is made a party, all expenses incurred by Mortgagee to prosecute or defend the rights created by this mortgage and said note, or either, together with reasonable attorney's fees and costs, whether same be rendered for negotiation, trial or appellate work, shall be paid by Mortgagor.

12.     Acceleration; Application of Monies by Mortgagee.  (a)  That if any money secured hereby is not fully paid within FIVE (5) days after it becomes due, except for the payment due on the Mature Date which shall be paid without delay or demand, or if any covenant or agreement of said note and this mortgage, or either, is breached, Mortgagee shall have the option to accelerate payment of the entire principal and any other money secured hereby as immediately due and payable without notice.  Time is of the essence of this mortgage.  Any payment made by Mortgagee under paragraphs 2, 3, 4, 5, or 11 shall bear interest at the maximum legal rate from the date of payment and shall be secured by this mortgage.   If Mortgagor shall fail to pay the same forthwith upon such demand, the Mortgagee shall be entitled to sue for and to recover judgment for the whole amount so due and unpaid together with costs, which shall include attorney's fees as provided herein and the reasonable compensation, expenses and disbursements of the Mortgagee's agents, either before, after or during the pendency of any proceedings.  The right of the Mortgagee to recover such judgment shall not be affected by any taking, possession or foreclosure sale, hereunder, or by the exercise of any other right, power or remedy for the enforcement of the terms of this Mortgage, or the foreclosure of the lien hereof.  No waiver of or failure to enforce any default or obligation under this mortgage and said note, or either, shall constitute a waiver of any subsequent default or of the terms of either instrument.  If there is any conflict between the terms of this mortgage and said note, the terms of this mortgage shall prevail.

        (b)  In case of a foreclosure sale of any of the Mortgaged Property and of the application of the proceeds of sale to the payment of the debt hereby secured, the Mortgagee shall be entitled to enforce payment of and to receive all amounts then remaining due and unpaid upon the Note, and the Mortgagee shall be entitled to recover judgment for any portion of the debt remaining unpaid, with interest at the Default Rate.

        (c)  Any monies thus collected by the Mortgagee or received by the Mortgagee under this Paragraph 12 shall be applied as follows:  (i)  FIRST, to the payment of the attorney's fees and expenses, as provided herein; the fees and expenses of Mortgagee's agents; taxes paid; insurance premiums paid;  receiver's fees and any other fees or expenses as provided herein;   (ii) SECOND, toward payment of the amounts due and unpaid upon the Note.

13.     Superior Mortgage.

        (a)  This Mortgage is subordinate to a certain mortgage in the original principal amount of ONE MILLION NINE HUNDRED AND TEN THOUSAND AND NO/100 Dollars ($1,910,000.00), executed by STEVE OSTROVSKIY, in favor Mortgage Electronic Registration Systems, Inc., as nominee for Carrington Mortgage Services, LLC recorded in Instrument

*Real Estate Mortgage*

*$500,000 Loan*

S.O.

*Page 4 of 8*

Number 119753033, Public Records of Broward County, Florida (hereinafter the "Senior Mortgage").

(b)    In the event that the Mortgagor defaults in any payment or any other condition stipulated in the Senior Mortgage, then the entire principal sum, together with all accrued interest thereon, secured by this Mortgage shall become due and payable at the option of the Mortgagee.

(c)    The Mortgagor covenants and agrees to make all payments and perform all conditions and covenants in the Senior Mortgage, and in the event of any default in any such payment or payments, conditions or covenants, the Mortgagee, without waiving the option to foreclose, herein reserves the right to make such payments, or perform such conditions or covenants with respect to the Senior Mortgage, so as to maintain the Senior Mortgage in good standing and prevent a foreclosure thereof. Any and all sums paid or expenses incurred on behalf of the Mortgagor, together with interest thereon from the date of payment at the Default Rate, shall be added to the indebtedness secured by this Mortgage.

14.    Other Mortgages. (a)  The Mortgagor agrees to comply with and abide by the terms, covenants and conditions of any superior or inferior mortgage encumbering the Mortgaged Property, and to promptly make each and every payment required thereunder.  The Mortgagor represents and warrants unto Mortgagee that no prior mortgage encumbering the Mortgaged Property prohibits the Mortgagor from further encumbering the Mortgaged Property, or if prohibited, the required consent from the appropriate party has been obtained, and that the giving of this Mortgage shall not constitute an Event of Default or breach of any prior mortgage encumbering the Mortgaged Property.  The Mortgagor agrees that in the event Mortgagee is joined in any action brought by the holder of a superior or inferior mortgage encumbering the Mortgaged Property, the Mortgagor shall be obligated to pay to Mortgagee all costs incurred by the Mortgagee in the defense of such action, including reasonable attorney's fees.  Mortgagor agrees to reimburse Mortgagee for such costs and expenses upon demand.  All such costs and expenses incurred by the Mortgagee in the defense of such action shall be secured by the lien of this Mortgage and shall bear interest at the Default Rate from the date upon which such costs or expenses were incurred until the date upon which same are paid-in-full by the Mortgagor.

(b) A failure of the Mortgagor to perform any condition or obligation under a superior or inferior mortgage affecting the Property shall constitute an Event of Default of this Mortgage and entitle the Mortgagee to make perform on behalf of Mortgagor.  Any sums advanced by Mortgagee for such purposes shall be secured by the lien of this Mortgage and shall bear interest at the Default Rate from the date upon which such costs or expenses were incurred until the date upon which same are paid-in-full by the Mortgagor.

(c)  If foreclosure proceedings should be instituted on any mortgage superior or inferior to this Mortgage, or if any foreclosure proceedings are instituted on any lien of any kind affecting the Mortgaged Property, such action shall constitute an Event of Default and a breach of this Mortgage, and the Mortgagee, at its option, may immediately or thereafter declare this

and all indebtedness secured by this Mortgage to be due and payable in full. Any modification of any mortgage superior to this Mortgage may increase in the amount outstanding under any superior mortgage, whether pursuant to a future advance agreement or otherwise, or any waiver of any principal or interest payments on any note or mortgage superior to this Mortgage, or any release of any guarantor or modification or any guaranty affecting any superior mortgage, shall constitute an Event of Default and a breach of the terms and covenants of this Mortgage and the Mortgagee may, at its option, declare this Mortgage and all indebtedness secured hereby to be immediately due and payable in full.

(d) Mortgagor hereby assigns and transfers to the Mortgagee all surplus sums which may come into the hands of the holder of any superior mortgage or the Mortgagor upon any foreclosure of such superior mortgage, hereby directing that such surplus funds be forthwith paid over to the Mortgagee to be applied against the indebtedness secured hereby.

15.      Mortgage Secures Indebtedness.   It is expressly agreed and understood that this Mortgage secures the indebtedness or obligation of the Mortgagor to the Mortgagee, with respect to the loan evidenced by the Note, and all renewals, extensions and modifications thereof, and that this Mortgage shall not be deemed as released, discharged or satisfied until the entire indebtedness is paid in full.

16.      Additional Security.   As additional security for performance and payment of all obligations secured hereunder, the Mortgagor does pledge, transfer, assign and deliver to the Mortgagee any and all property of Mortgagor of every kind and description, now or hereafter in the possession, custody, or control of Mortgagee, including any balances, credits, deposits, accounts, monies, collections, draft bills and securities now or hereafter in the possession, custody or control of Mortgagee, and Mortgagee is hereby given a lien upon said property for the payment of the indebtedness or obligations secured by this Mortgage; and Mortgagee is hereby authorized and empowered at its option, without notice, to appropriate any and all of such property and apply any and all thereof to the payment of the indebtedness or obligations hereby secured, at any time after such indebtedness or obligation becomes payable. The Mortgagee is further authorized to sell, assign and deliver any and all such property in which the Mortgagor has an interest at a private or public sale, all at the option of the Mortgagee, without advertisement or notice of sale and without notice to the Mortgagor, which rights the Mortgagor hereby expressly waives.   For the purposes of this paragraph, any realty of the Mortgagor encumbered by a mortgage in favor of the Mortgagee other than this Mortgage, now or hereafter existing, shall be deemed to be in the possession of the Mortgagee, and the lien of such other mortgage shall, by the joiner of the Mortgagor herein, be made to secure all of the obligations secured hereunder.

17.      Future Advances. This Mortgage is given to secure not only the existing Indebtedness, but also future advances (whether such advances are obligatory or are made at the option of Mortgagee, or otherwise) as are made by Mortgagee, within thirty (30) years from the date hereof, to the same extent as if such future advances were made on the date of the execution of

*Real Estate Mortgage*

*$500,000 Loan*

S.O.                           *Page 6 of 8*

this Mortgage, if applicable.  The total amount of indebtedness that may be so secured may decrease or increase from time to time, but all indebtedness secured hereby at any one time shall not exceed the amount of $600,000.00, plus interest thereon, and any disbursements made for the payment of impositions (whether taxes, levies or otherwise), insurance, or other liens on the Mortgaged Property, with interest on such disbursements at the Default Rate in the Note.  The Mortgagee has no obligation, whatsoever, to make a Future Advance.

18.     Payment of the Note.  The Mortgagor shall pay all and singular the principal and interest and other sums of money payable by virtue of the Note and this mortgage, or either, promptly within five (5) days, respectively, of when the same severally become due. The Mortgagor has promised to pay this debt in regular Periodic Payments, as per the Note, and to pay the debt in full not later than July 1, 2025.

In Witness Whereof, the mortgagors have hereunto set their hands and seals the day and year first above written.

(remainder of the page shall remain intentionally blank- signatures to follow on page 8)

*Real Estate Mortgage*

*$500,000 Loan*

**THIS IS A BALLOON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($500,000.00), TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.**

Signed, sealed and delivered in our presence:       MORTGAGOR:

**IN&OUT ALL ACCESS SYSTEMS INC, a Florida corporation**

Printed Name: _Ilana Artzy_

Printed Name: _Dena Rosenbergs_

By: **STEVE OSTROVSKIY, President**
Address: 1200 N FEDERAL HWY
SUITE A
HOLLYWOOD, FL 33020

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

The foregoing instrument was sworn to, subscribed and acknowledged before me by means of ☑ physical presence or ☐ online notarization this 10th day of December 2024, by STEVE OSTROVSKIY, President of IN&OUT ALL ACCESS SYSTEMS INC, a Florida corporation, who is/are personally known to me or who has/have produced _FL ID_, as identification.

Printed Name: _____
Notary Public
My Commission Expires:  / /

ILANA KALICHMAN-ARTZY
Notary Public - State of Florida
Commission # HH 538538
My Comm. Expires Oct 10, 2028
Bonded through National Notary Assn.

*Real Estate Mortgage*

*Page 8 of 8*

*$500,000 Loan*

Exhibit A

Lot 1, Block 2, RIVERLAND MANORS, according to the map or plat thereof as recorded in Plat Book 27, Page 49, Public Records of Broward County, Florida.

S. O.